Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
Kyle Wilson (SBN 323888)
kyle@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Shayler, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>HB MAT PROPERTIES, a California limited liability company; FUSION SUSHI, a business of unknown form; and DOES 1-10,<br><br>    Defendants. | Case No.:  2:20-cv-11107-FMO-GJS<br><br>Hon. Fernando M. Olguin<br><br><br>**JOINT EVIDENTIARY APPENDIX ISO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (VOL. 1)** |

EVIDENTIARY APPENDIX ISO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# Table of Contents

Declaration of James Shayler ................................................................. 1

Declaration of Dr. McCloy ................................................................... 14

Declaration of John Battista ................................................................ 22
Declaration of Anoush Hakimi ........................................................... 32
Declaration of Marc Friedlander ........................................................ 36

Exhibit 1 ............................................................................................ 41

Exhibit 2 ............................................................................................ 46

Exhibit 3 ............................................................................................ 48

Exhibit 4 ............................................................................................ 53

Exhibit 5 ............................................................................................ 56

Exhibit 6 ............................................................................................ 60

Exhibit 7 ............................................................................................ 63

Exhibit 8 ............................................................................................ 68

Exhibit 9 ............................................................................................ 71

Exhibit 10 .......................................................................................... 75

Exhibit 11 .......................................................................................... 77

Exhibit 12 .......................................................................................... 79

Exhibit 13 ........................................................................................ 221

Exhibit 14 ........................................................................................ 224

Exhibit 15 ........................................................................................ 244

Exhibit 16 ........................................................................................ 246

Exhibit 17 ........................................................................................ 248

Exhibit 18 ........................................................................................ 250

Exhibit 19 ........................................................................................ 252

Exhibit 20 ........................................................................................ 254

Exhibit 21 ........................................................................................ 256

Exhibit 22 ........................................................................................ 258

Exhibit 23 ........................................................................................ 260

Exhibit 24................................................................................................262

Exhibit 25................................................................................................264

Exhibit 26................................................................................................266

Exhibit 27................................................................................................268

Exhibit 28................................................................................................270

Exhibit 29................................................................................................272

Exhibit 30................................................................................................274

Exhibit 31................................................................................................276

Exhibit 32................................................................................................278

Declaration Of James S. Link                                      285

Exhibit 33, Deposition of James Shayler                           288

Exhibit 34, Civil Rights Complaint                                 437

Exhibit 35, Lumbar Spine Medical Source Statement                 528

Exhibit 36, Photo of Stairs at CPAP store                         533

Exhibit 37, Stills from July 14, 2021                             535

Exhibit 38, Declaration of James Shayler, dated 7/16/2021         574

Exhibit 39, Still from April 2, 2021 in CPAP store                598

Exhibit 40, Still from April 2, 2021 outside CPAP store           600

Exhibit 41, Still from July 16, 2019 video outside                602

Exhibit 42, Still from July 16, 2019 video inside                 604

Exhibit 43, Declaration of James Shayler, dated 3/17/21           606

Exhibit 44, Still from July 16, 2019 video going inside           618

Exhibit 45, Declaration of James Shayler, dated 6/10/21           620

Exhibit 46, Video: RPReplay_Final1622081366                       629

Exhibit 47, Video: RPReplay_Final1622084437                       629

Exhibit 48, Video: July 2021 Checking access aisle                629

Exhibit 49, Video: July 2021 video getting drink

Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Shayler, an individual,<br><br>         Plaintiff,<br><br>      v.<br><br>HB MAT PROPERTIES, a California limited liability company; FUSION SUSHI, a business of unknown form; and DOES 1-10,<br><br>         Defendants. | Case No.:  2:20-cv-11107-FMO-GJS<br><br>Hon. Fernando M. Olguin<br><br>**DECLARATION OF JAMES SHAYLER IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## DECLARATION OF JAMES SHAYLER

I, James Shayler, declare as follows:

1.      I am over the age of eighteen, of sound mind, and capable of making this declaration.  I am the Plaintiff in this action, wherein I have filed a First Amended Complaint (FAC) for violations of the Americans with Disabilities Act (ADA) and the Unruh Civil Rights Act (UCRA).  I make this declaration in support of Plaintiff's Motion for Summary Judgment.

2.      I have knowledge of the matters contained herein, and they are true and correct of my own personal knowledge, except for those matters stated upon information and belief, and as to those matters, I believe them to be true and correct.  If called and sworn as a witness, I could and would testify competently hereto.

### I.      My Disabilities

3.      I am a disabled senior citizen.  I have various physical conditions that impact my health and mobility.  I had two knee replacement surgeries which did not go well.  The surgeries resulted in severe pain in my knees and caused my legs to become very weak.  I have a pinched sciatic nerve that causes my left leg to give out sporadically.  I occasionally lose balance when my left leg gives out. I have neuropathy affecting the bottom of my feet, which causes a burning sensation.  I have spinal arthritis, spinal stenosis, spondylosis, and a herniated

disk.  I experience severe back pain on a regular basis.  I feel sciatica nerve pain in my left hip, which also causes me to limp.

4.      I use a cane daily to help me walk.  When my pain is especially bad, I use a walker instead.  Sometimes my pain is so severe that I cannot be mobile, i.e., I cannot walk around at all.  Filed concurrently herewith as <u>Exhibit 10</u> are true and correct copies of photos I took of my walker and cane.

5.      I have very limited use of one arm and hand as a result of an injury on the job as a firefighter years ago.  I cannot put much pressure on my left arm or hand.  I was also in a car accident recently, which caused my back condition to further deteriorate.

6.      Considering my permanent disabilities, the State of California has issued me a permanent disabled person parking placard.  Filed concurrently herewith as <u>Exhibit 11</u> is a true and correct copy of a photo I took of my disabled person parking placard, with identification number redacted.

7.      A true and correct copy of the "Lumbar Spine Medical Source Statement" I received from Beverly Hospital, in connection with my evaluation by Dr. Charles Ananian on February 11, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as <u>Exhibit 1</u>.  The information in the Lumbar Spine Medical Source Statement is accurate and reflects Dr. Ananian's observations and notes during the visit.  As reflected in the Lumbar

3

DECLARATION OF JAMES SHAYLER ISO PLAINTIFF'S MSJ

3

Spine Medical Source Statement, there are multiple levels of diffuse disc bulges in my spine with impingement at the L5 nerve root.  *See* Exh. 1 (2/11/20 Lumbar Spine Medical Source Statement).  I have sciatica, and experience pain in my lower spine and right leg.  *Id.* at 1-2.  I have difficulty walking and standing for longer than fifteen (15) minutes.  *Id.* at 1-2.

8.     A true and correct copy of the "Orthopedic Follow-Up Evaluation" record I received from Dr. Thomas McCloy's office, in connection with an evaluation I had with orthopedic surgeon John D. Plut, M.D. on December 8, 2016, and redacted to remove irrelevant private information, is filed concurrently herewith as <u>Exhibit 2</u>.  The information in the evaluation is accurate and reflects Dr. Plut's observations, examination, and notes during our visit.  During this visit, Dr. Plut diagnosed me with bilateral osteoarthritis of the knees.  *See* Exh. 2 (12/8/16 Orthopedic Follow-Up Evaluation) at 2.

9.     A true and correct copy of a progress note I received from Dr. Thomas McCloy's office, in connection with my visit with Dr. McCloy on January 15, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as <u>Exhibit 3</u>.  The information in the progress note is accurate and reflects Dr. McCloy's observations and notes during our visit.  As noted in the document, I have a history of:  fracture to the right ulnar bone that caused nerve damage and hand atrophy, spinal stenosis and chronic sciatic nerve

4

DECLARATION OF JAMES SHAYLER ISO PLAINTIFF'S MSJ

4

pain, bilateral knee replacements, and elbow fracture surgery.  Exh. 3 (1/15/20 Progress Note) at 2-3.  Dr. McCloy diagnosed me with chronic pain syndrome and sciatica.  *Id.* at 4.

10.     A true and correct copy of a progress note I received from Dr. Thomas McCloy's office, in connection with my visit with Dr. McCloy on March 2, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as Exhibit 4.  The information in the progress note is accurate and reflects Dr. McCloy's observations and notes during our visit. During that visit, I discussed with Dr. McCloy that I had a deep hole in the callus at the middle of the metatarsal heads of my foot, but because I have neuropathy, I could not feel it at that time.  *See* Exh. 4 (3/2/20 Progress Note) at 2.  Dr. McCloy referred me to a podiatrist.  *Id.* at 3.

11.     A true and correct copy of a progress note I received from Dr. Thomas McCloy's office, in connection with my evaluation with Dr. McCloy on April 14, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as Exhibit 5.  The information in the progress note is accurate and reflects Dr. McCloy's observations and notes during our visit. During this visit, I discussed with Dr. McCloy that I was continuing to see a podiatrist every week.  *See* Exh. 5 (4/14/20 Progress Note) at 2.  We again discussed my ongoing right arm and hand pain from an old ulnar nerve injury,

DECLARATION OF JAMES SHAYLER ISO PLAINTIFF'S MSJ

my chronic sciatic nerve pain, and my need for medications due to my chronic pain. *Id.*

12. A true and correct copy of a progress note I received from Dr. Thomas McCloy's office, in connection with my evaluation with Dr. McCloy on May 18, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as <u>Exhibit 6</u>. The information in the progress note is accurate and reflects Dr. McCloy's observations and notes during our visit. During this visit, I discussed with Dr. McCloy that I was hospitalized for osteomyelitis in my foot. *See* Exh. 6 (5/18/20 Progress Note). *Id.* at 2.

13. A true and correct copy of the record I received from Dr. Thomas McCloy's office, in connection with my visit with Dr. Henry Su on July 2, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as <u>Exhibit 7</u>. The information in the document is accurate and reflects Dr. Su's observations and notes during our visit. I had a follow up visit with Dr. Su regarding my foot infection and osteomyelitis. *See* Exh. 7 (7/2/20 Progress Note) at 2.

14. A true and correct copy of a progress note I received from Dr. Thomas McCloy's office, in connection with my evaluation with Dr. McCloy on July 14, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as <u>Exhibit 8</u>. The information in the progress note is

accurate and reflects Dr. McCloy's observations and notes during our visit. During this visit, I discussed with Dr. McCloy that I required a walking boot. *See* Exh. 8 (7/14/20 Progress Note). *Id.* at 2.

15.     A true and correct copy of a progress note I received from Dr. Thomas McCloy's office, in connection with my visit with Dr. McCloy on September 9, 2020, and redacted to remove irrelevant private information, is filed concurrently herewith as <u>Exhibit 9</u>. The information in the progress note is accurate and reflects Dr. McCloy's observations and notes during our visit. During this visit, I discussed with Dr. McCloy that I had ongoing neuropathy pain and required medications. *See* Exh. 9 (9/9/20 Progress Note). *Id.* at 2.

16.     Because I have severely impaired mobility, and rely on a walker or cane, I need ADA compliant routes of travel, parking, signage, business interiors, and restroom facilities for full and equal access to public accommodations.

## II.     Barriers at the Property

17.     In March 2019, February 2020, and September 2020, I visited the property located at 1200 Pacific Coast Highway, Hermosa Beach, CA 90254, California 90254 (the "Property"). During my visits, I encountered the access barriers, conditions, and/or violations identified in my FAC. *See* ECF Doc. 20, First Amended Complaint (FAC) at ¶ 21.

18.     On the Property, there is a business called Fusion Sushi, which is a restaurant/eatery ("the business").  I visited the business on three occasions, in March 2019, February 2020, and September 2020.

19.     During my visits, I could not easily access the Property and/or the business.  I had difficulty parking, disembarking from the car, and walking to and entering the business given the hazards at the Property.  *See* ECF Doc. 20, FAC at ¶¶ 18-23.  I experienced difficulty, humiliation, and frustration.  *See* ECF Doc. 20, FAC at ¶ 22.

20.     I need to walk on a smooth surface free from obstructions and without excess slopes or changes in level because I am at risk of tripping when I use my cane or walker.  During my visits, there were changes in level and excess slopes in the route connecting the designated disabled parking space (and/or access aisle) to the business entrance and on the route between the business entrances.  I have been advised by my investigator that these conditions (issues) remain.

21.     Because it is difficult for me to walk and stand for longer than fifteen (15) minutes, I need directional signage pointing me to an accessible entrance, so that I can quickly figure out where to go. The business also lacked directional signage indicating an accessible entrance, making it difficult for me to

Case No. 2:20-cv-11107-FMO-GJS

DECLARATION OF JAMES SHAYLER ISO PLAINTIFF'S MSJ

determine where to travel safely. I have been advised by my investigator that these conditions (issues) remain.

22.     I need adequate space to disembark from the car, and to unload my mobility device(s).  The designated disabled parking space was not long enough, and there was not adjacent access aisle that was clearly marked to allow me to unload my mobility device(s) during my visits to the Property.

23.     I need to park in the designated disabled parking space, and it is difficult for me to determine where to park when the designated disabled parking space is not clearly marked.  Also, other people who are not disabled tend to park in the designated disabled parking space, and/or access aisle, which lack adequate signage warning against unauthorized parking.  It is exceedingly difficult for me to disembark from the car when I have to use a non-disabled parking space (without an adjacent access aisle), instead of a designated disabled parking space (with an adjacent access aisle).  The proper signs were not posted when I visited the Property.  I have been advised by my investigator that these conditions (issues) remain.

24.     I intend and plan to visit the Property again once the existing barriers to access are removed (i.e., once the existing ADA violations are remediated).

25.     I presently remain deterred from visiting the Property because I am aware that access barriers (i.e., conditions in violation of the ADA and UCRA) still exist.

26.     I have reviewed the Declaration of John Battista, filed concurrently herewith, and am aware of the access barriers (i.e., non-compliant conditions) he found during his inspection on April 1, 2021.

27.     The non-compliant conditions Mr. Battista observed included: improperly spaced hatch lines in the access aisle; lack of handrails on the stairway on the route of travel; concrete expansion joints on the route of travel spaced too far apart; lack of adequate vertical clearance on the route of travel to the outdoor dining area; improperly secured carpet at the front entrance door; excessive force required to operate the front door; missing directional signage to the accessible restroom; missing men's restroom sign; inaccessible locking mechanisms on the restroom doors; lack of adequate clearance in the men's restroom; an inaccessible door to the water closet in the men's restroom; improperly located controls for the flush valve in the toilet in the men's restroom; and an improperly located toilet seat cover dispenser in the men's restroom.  These conditions constitute barriers to access for disabled persons such as myself as described above. I am aware that my investigator found hatch lines in the access aisle that are not a maximum of thirty-six inches (36") on center. I need to use the adjacent access aisle (to unload my

mobility device(s)) due to my mobility issues. When the hatch lines on the access aisle are not properly marked, others tend to park there.

28.     I am aware that my investigator found that the handrails on the stairs were not in the proper position. Because of my leg issues (i.e., pain and weakness), I rely on handrails to guide myself up and down stairs.

29.     I am aware that my investigator found that there are concrete expansion joints in the walkway spaced greater than one-half inch (1/2"), and measuring up to one inch (1"). It is very dangerous for me to push my walker when the ground is not smooth, because the wheels on my walker may become trapped and cause me to fall. Even when I am not using my walker, my cane or foot may become stuck in the uneven ground, again posing a fall risk for me.

30.     I am aware that my investigator found unsecured floor mats. I have difficulty walking on carpets or mats that are not secured, because I am at a heightened risk of tripping if my cane, walker, and/or foot catches on the unsecured carpet or mat, causing me to lose my balance (exacerbating my balance issues), trip, and/or fall.

31.     I am aware that my investigator found that the front door's opening force measures twelve pounds (12 lbs.). It is difficult for me to open heavy doors due to my balance issues, back issues, and because I have limited use of one of my hands.

32.     I am aware that my investigator found door locking (twist lock) and opening hardware (door knob) on the restroom door that requires tight grasping, pinching, and/or twisting of the wrist. I have limited use of my right hand, which makes it difficult for me to operate these types of door knobs and locks, particularly when I need to use my other hand to hold my cane or walker.

33.     I am aware that my investigator found limited maneuvering clearance on the pull side of the men's restroom door, and a narrow opening to the restroom stall, which makes it difficult for me to pass through both with my walker.

34.     I am aware that my investigator found that the restroom stall door is not self-closing, the toilet flush valve is on the wall side, and toilet seat cover dispenser is not on an accessible route. Given my balance issues, while I am also trying to hold on to my cane or walker, it is difficult for me to reach out and close the door, flush the toilet, or retrieve a toilet seat cover.

35.     Once the remaining violations have been remediated, making the Property safe for me, I plan to visit again and patronize Fusion Sushi because I have two friends who live in Hermosa Beach near Fusion Sushi, and I enjoy traveling to visit them, spending time with them at the beach, and going out to eat in the neighborhood.

I declare under the penalty of perjury under the laws of the State of

California and the United States of America that the foregoing is true and correct.

Dated:  October 22, 2021

_James Shayler_

James Shayler

DECLARATION OF JAMES SHAYLER ISO PLAINTIFF'S MSJ

Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
Kyle Wilson (SBN 323888)
kyle@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Shayler, an individual, | Case No.:  2:20-cv-11107-FMO-GJS |
| Plaintiff, | Hon. Fernando M. Olguin |
| v. | |
| HB MAT PROPERTIES, a California limited liability company; FUSION SUSHI, a business of unknown form; and DOES 1-10, | **DECLARATION OF THOMAS E. MCCLOY, M.D. ISO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## **DECLARATION OF THOMAS E. MCCLOY, M.D.**

I, Thomas E. McCloy, M.D., declare as follows:

1.     I am Plaintiff James Shayler's primary care physician. I have been a licensed physician in the State of California since 1963. I practice internal medicine at ProHealth Partners in Long Beach, California. Based upon my own experience and knowledge, I can competently testify to the following:

2.     I have been treating Mr. Shayler since January 15, 2020.

3.     Mr. Shayler has a pinched nerve in his spine. He also has multiple levels of diffuse disc bulges in his spine.

4.     Mr. Shayler has sciatica. He experiences pain in his lower spine and right leg.

5.     Mr. Shayler had knee replacement surgeries on both knees.

6.     Mr. Shayler has difficulty walking and standing for longer than fifteen (15) minutes. Sometimes his pain is so severe that he cannot be mobile, i.e., he cannot walk around at all.

7.     During his visits to my office, I have observed Mr. Shayler use a cane and walker to assist him with ambulation.

8.     Mr. Shayler has very limited use of his left arm and hand as a result of an injury on the job as a firefighter years ago.

9.     Mr. Shayler was also in a car accident recently, which caused his

back condition to worsen.

10.     I have reviewed the record of the February 11, 2020 evaluation of

Mr. Shayler by Charles E. Ananian, D.P.M., attached hereto as Exhibit 1.

11.     Dr. Ananian's evaluation is consistent with my impressions of Mr.

Shayler's conditions based on my interactions with and observations of Mr.

Shayler.

I declare under the penalty of perjury under the laws of the State of

California and the United States of America that the foregoing is true and correct.

Dated: March 9 , 2021

Thomas E. McCloy, M.D.

DECLARATION OF THOMAS E. MCCLOY, M.D.

16

# EXHIBIT 1

## LUMBAR SPINE MEDICAL SOURCE STATEMENT

From. BEVERLY ⚕ HOSPITAL

Re: _JAMES Shayler_ (Name of Patient)

▬▬▬▬▬ (Social Security No.)

Please answer the following questions concerning your patient's impairments. *Attach relevant treatment notes, radiologist reports, laboratory and test results as appropriate.*

1. Frequency and length of contact: _8 days_

2. Diagnoses: _multiple levels of Diffused Disc Bulge with impsugement of the L5 Nerve Root._

3. Prognosis: _____

4. Identify the *clinical findings*, laboratory and test results that show your patient's medical impairments:

    _MRI._

5. Have your patient's impairments lasted or can they be expected to last at least twelve months?      ☒ Yes      ☐ No

6. Identify all of your patient's *symptoms*, including pain, insomnia, fatigue, etc.:

    _unable to stand an walk over 15 minutes pain at 10 level._

7. If your patient has pain:

    a. Characterize the nature, location, radiation, frequency, precipitating factors, and severity of your patient's pain:

    _pain Runs down Right leg, and lower spine._

    b. Does your patient have neuro-anotomic distribution of pain?      ☐ Yes      ☒ No

From Social Security Disability Practice by Thomas E. Bush, copyright James Publishing. Used with permission. For information 800-440-4780 or www.JamesPublishing.com.

c. Identify any positive objective signs:

☐ Reduced range of motion: Description _____

☑ Positive supine straight leg raising test:  ☐ Swelling
   Left at _15_ ° Right at _20_ °  ☑ Muscle spasm

☑ Positive seated straight leg raising test  ☐ Motor loss

☐ Abnormal gait  ☐ Muscle atrophy

☑ Sensory loss  ☑ Muscle weakness

☐ Reflex loss  ☐ Impaired appetite

☑ Tenderness  ☐ Weight change

☐ Crepitus  ☐ Impaired sleep

Other signs: _____

8. Do emotional factors contribute to the severity of your patient's symptoms and functional limitations?  ☐ Yes  ☑ No

9. Identify the side effects of any medication that may have implications for working, e.g., dizziness, drowsiness, stomach upset, etc.:

_____
_____

10. As a result of your patient's impairments, estimate your patient's functional limitations if your patient were placed in a ***competitive work situation:***

a. How many city blocks can your patient walk without rest or severe pain? _no walking_

b. Please circle the hours and/or minutes that your patient can sit *at one time*, e.g., before needing to get up, etc.

    **Sit:**    0  5  10  15  20 ⓼0 45        1  2  More than 2
                        Minutes                    Hours

c. Please circle the hours and/or minutes that your patient can stand *at one time*, e.g., before needing to sit down, walk around, etc.

    **Stand:**    0  5  10 ⓖ5 20  30  45        1  2  More than 2
                       Minutes                 Hours

d. Please indicate how long your patient can sit and stand/walk ***total in an 8-hour working day*** (with normal breaks):

    **Sit**    **Stand/walk**
    ☑      ☑    less than 2 hours
    ☐      ☐    about 2 hours
    ☐      ☐    about 4 hours
    ☐      ☐    at least 6 hours

e. Does your patient need a job that permits shifting positions *at will* from sitting, standing or walking?  ☑ Yes  ☐ No

19³

f. Does your patient need to include periods of walking around during an 8-hour working day? ☑ Yes ☐ No

If yes, how **often** must your patient walk? 1 5 10 15 20 30 45 60 90
Minutes

How **long** must your patient walk each time? 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15
Minutes

g. Will your patient sometimes need to take unscheduled breaks during a working day? ☑ Yes ☐ No

If yes, 1) how **often** do you think this will happen? _5 times per day_

2) how **long** (on average) will your patient have to rest before returning to work? _15 mins_

h. With prolonged sitting, should your patient's leg(s) be elevated? ☑ Yes ☐ No

If yes, 1) how **high** should the leg(s) be elevated? _____

2) if your patient had a sedentary job, **what percentage of time** during an 8-hour working day should the leg(s) be elevated? _20_ %

i. While engaging in occasional standing/walking, must your patient use a cane or other assistive device? ☑ Yes ☐ No

*For this and other questions on this form, "rarely" means 1% to 5% of an 8-hour working day; "occasionally" means 6% to 33% of an 8-hour working day; "frequently" means 34% to 66% of an 8-hour working day.*

j. How many pounds can your patient lift and carry in a competitive work situation?

| | Never | Rarely | Occasionally | Frequently |
|---|---|---|---|---|
| Less than 10 lbs. | ☐ | ☑ | ☐ | ☐ |
| 10 lbs. | ☐ | ☐ | ☐ | ☐ |
| 20 lbs. | ☑ | ☐ | ☐ | ☐ |
| 50 lbs. | ☑ | ☐ | ☐ | ☐ |

k. How often can your patient perform the following activities?

| | Never | Rarely | Occasionally | Frequently |
|---|---|---|---|---|
| Twist | ☑ | ☐ | ☐ | ☐ |
| Stoop (bend) | ☑ | ☐ | ☐ | ☐ |
| Crouch/ squat | ☑ | ☐ | ☐ | ☐ |
| Climb ladders | ☑ | ☐ | ☐ | ☐ |
| Climb stairs | ☑ | ☐ | ☐ | ☐ |

l. If your patient has significant limitations with reaching, handling or fingering, please indicate the percentage of time during an 8-hour working day that your patient can use hands/fingers/arms for the following activities:

| | **HANDS:** Grasp, Turn Twist Objects | **FINGERS:** Fine Manipulations | **ARMS:** Reaching In Front of Body | **ARMS:** Reaching Overhead |
|---|---|---|---|---|
| **Right:** | % | % | % | % |
| **Left:** | % | % | % | % |

m. How much is your patient likely to be "*off task*"? That is, what percentage of a typical workday would your patient's symptoms likely be severe enough to interfere with *attention and concentration* needed to perform even simple work tasks?

☐ 0%   ☐ 5%   ☐ 10%   ☐ 15%   ☐ 20%   ☑ 25% or more

n. To what degree can your patient tolerate work stress?

☑ Incapable of even "low stress" work        ☐ Capable of low stress work
☐ Capable of moderate stress - normal work   ☐ Capable of high stress work

Please explain the reasons for your conclusion: _____

o. Are your patient's impairments likely to produce "good days" and "bad days"?
☑ Yes        ☐ No

If yes, assuming you patient was trying to work full time, please estimate, on the average, how many days per month your patient is likely to be absent from work as a result of the impairments or treatment:

☑ Never                         ☐ About three days per month
☐ About one day per month       ☐ About four days per month
☐ About two days per month      ☐ More than four days per month

11. Are your patient's impairments (physical impairments plus any emotional impairments) *reasonably consistent* with the symptoms and functional limitations described in this evaluation?                        ☑ Yes        ☐ No

If no, please explain: _____

12. Please add an additional page to describe any other limitations (such as psychological limitations, limited vision, difficulty hearing, need to avoid temperature extremes, wetness, humidity, noise, dust, fumes, gases or hazards, etc.) that would affect your patient's ability to work at a regular job on a sustained basis.

2/11/2020
*Date*

*Signature*

Printed/Typed Name: _____

BEVERLY 🍁 HOSPITAL

Charles E. Ananian, D.P.M.

7-35
11/09
§231.2

*Address:* _____

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER, an individual, | Case No.:  2:20-cv-11107-FMO-GJS |
| Plaintiff, | Hon. Fernando M. Olguin |
| v. | |
| HB MAT PROPERTIES, a California limited liability company; FUSION SUSHI, a business of unknown form; and DOES 1-10, | **DECLARATION OF JOHN BATTISTA IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

1

# DECLARATION OF JOHN BATTISTA

I, John Battista, declare as follows:

1.      I, the undersigned, am a licensed Certified Access Specialist (CASp #592). Based upon my own experience and knowledge, I can truthfully and competently testify to the following:

## I.      My Experience/Expertise

2.      I am the owner of a business named ADA Compliance Masters, Inc. My business predominately involves assessing various properties for accessibility law compliance.

3.      I have over 38 years of construction experience, including 10 years as a Tradesman, 10 years as a Construction Manager/Superintendent, and 18 years as a Building Inspector.

4.      I hold and maintain over 40 professional licenses, including Public School & Hospital Inspector, Fire Inspector, Licensed General Building Contractor, Accessibility Inspector/Plans Examiner, and State Certified Access Specialist.

5.      I am an ADA Specialist, a Special Inspector, an Expert Witness, and a Construction Forensic Investigator. I have been a Construction Consultant on numerous cases and projects throughout Southern California.

2

6.      I have served as a consultant for various public municipalities including Los Angeles Unified School District (LAUSD), Ventura Unified School District (VUSD), Los Angeles Community College District (LACCD), Los Angeles Department of Building & Safety (LADBS), and the Los Angeles County Department of Public Works (LACDPW).  Over the last 18 years, I have conducted accessibility and building inspections of schools, colleges, medical facilities, and essential services buildings.

7.      I am an expert in disabled access and the Americans with Disabilities Act (ADA). I have been appointed to the California Building Officials (CALBO) Access Committee for a second two-year term.

**II.     My Inspection of the Property at Issue**

8.      On April 1, 2021, I conducted an accessibility survey of the parking area, route(s) of travel, and business interior at the property located at 1200 Pacific Coast Highway, Hermosa Beach, CA 90254 (the "Property").

9.      A true and correct copy of my Site Accessibility Evaluation, dated April 9, 2021, is filed concurrently herewith as Plaintiff's Exhibit 12 ("P's Exh. 12 (Battista Evaluation)").

10.      In addition, I prepared a cost and time estimate for the findings identified in Exhibit 12. A true and correct copy of my Cost and Time for Fusion Sushi Remediation report is filed concurrently herewith as Plaintiff's Exhibit 13.

3

DECLARATION OF JOHN BATTISTA ISO MOTION FOR SUMMARY JUDGMENT

11.     I observed that access aisle is partially obstructed by the carpet from the outdoor dining area. P's Exh. 12 (Battista Evaluation) at 7-9.

12.     There is no cost associated with removing the carpet to maintain a clear access aisle. P's Exh. 13. It should take five minutes to complete. *Id.*

13.     I observed that the hatch lines at the access aisle are not a maximum thirty-six inches (36") on center, and instead were measured at thirty-seven inches (37") to thirty-eight inches (38") on center. *Id.* at 10-11.

14.     The estimated cost to stripe the hatch lines so that they are compliant is $150. P's Exh. 13. It should take two hours to complete. *Id.*

15.     I observed that the entrance from the public sidewalk at the steps is not accessible and is missing directional signage pointing to an accessible entrance. *Id.* at 12-13.

16.     The estimated cost of providing a directional sign above the stairs pointing to the accessible route is $75. P's Exh. 13. It should take thirty minutes to complete. *Id.*

17.     I observed that the stairway does not have handrails, and stairways must have handrails on both sides. *Id.* at 14-16.

18.     The estimated cost of providing compliant handrails on both sides of the stairs is $900. P's Exh. 13. It should take four hours to complete. *Id.*

4

DECLARATION OF JOHN BATTISTA ISO MOTION FOR SUMMARY JUDGMENT

19.     I noted that the walkway between business entrances has cross slopes greater than two percent, measuring up to 3.9 percent. *Id.* at 19-22.

20.     The estimated cost of reworking the concrete walkway to provide cross slopes no greater than 2% is $15,000. P's Exh. 13. It will take three days to complete. *Id.*

21.     I noted that the concrete expansion joints in the walkway are spaced greater than one-half inch (1/2"), measuring up to one inch (1") instead. *Id.* at 23-25.

22.     The estimated cost of filling the expansion joints with an approved caulking is $300. P's Exh. 13. It should take three hours to perform this work. *Id.*

23.     I observed that there is no accessible route to the outdoor dining area. *Id.* at 32-33.

24.     The estimated cost of purchasing and providing a temporary aluminum ramp to the outdoor dining area is $200. P's Exh. 13. It should take 30 minutes to install the temporary ramp. *Id.*

25.     I noted that the canopy and hanging lights at the outdoor dining area extends down too close to the route of travel, which provides clearance of less than sixty-five inches (65") instead of the minimum required eighty inches (80"). *Id.* at 36-38.

5

DECLARATION OF JOHN BATTISTA ISO MOTION FOR SUMMARY JUDGMENT

26.     It should not cost anything to raise the canopy lights to provide the required 80" overhead clearance P's Exh. 13. It should take 30 minutes to complete this work. *Id.*

27.     I observed that the floor mats at the front entrance are not secured in place. *Id.* at 39-41.

28.     It should not cost anything to the floor mats at the front entrance. P's Exh. 13. It should take 15 minutes to complete this work. *Id.*

29.     I noted that the front entrance threshold is greater than one-half inch (1/2") high, and instead measures one inch (1") high. *Id.* at 42-43.

30.     The estimated cost of providing a compliant threshold at the front entrance is $200. P's Exh. 13. It should take one hour to complete this work. *Id.*

31.      I observed that the front door entrance exceeds the maximum allowable opening force of five pounds (5 lbs.); instead, it the door opening force measures twelve pounds (12 lbs.). *Id.* at 44.

32.     The estimated cost of adjusting the door opening pressure is $25. P's Exh. 13. It should take fifteen minutes to complete this work. *Id.*

33.     I observed that there is no directional signage provided to the nearest accessible restrooms. *Id.* at 53-55.

34.     The estimated cost of replacing the existing signs with accessible restroom signs is $30. P's Exh. 13. It should take fifteen minutes to complete. *Id.*

6

35.     I observed that a compliant room identification sign is missing on the strike side of the door to the men's restroom. *Id.* at 92-93.

36.     The estimated cost of providing a compliant restroom identification sign is $45. P's Exh. 13. It should take fifteen minutes to complete. *Id.*

37.     I observed that the door operating hardware is not accessible, as there is knob type hardware provided, which can be difficult to grasp with one hand and/or requires tight grasping, pinching, or twisting of the wrist to operate in the men's restroom. *Id.* at 94-95.

38.     I observed that in the men's restroom, the door locking hardware requires tight grasping, pinching, or twisting of the wrist to operate, as a twist style lock is provided here. *Id.* at 96.

39.     The estimated cost of providing compliant lever type hardware on the door handle is $40. P's Exh. 13. It should take 30 minutes to complete. *Id.*

40.     I noted that the maneuvering clearance on the pull side of the men's restroom door extends less than eighteen inches (18") beyond the latch of the door. *Id.* at 99-100. There are only ten inches (10") of pull clearance provided. *Id.*

41.     The estimated cost of removing the urinal partition to allow for the appropriate amount of maneuvering clearance is $50. P's Exh. 13. It should take 30 minutes to perform this work. *Id.*

7

42.    I observed that the compartment door in the men's restroom is not self-closing. *Id.* at 111-112.

43.    The estimated cost of providing self-closing hinges on the compartment door is $150. P's Exh. 13. It should take two hours to perform this work. *Id.*

44.    I noted that the door handle is too small on the exterior side of the toilet compartment door, and the door handle is missing at the interior of the toilet compartment door in the men's restroom. *Id.* at 113-115.

45.    The estimated cost of providing a complaint loop handle on both sides of the compartment door is $100. P's Exh. 13. It should take one hour to complete this work. *Id.*

46.    I observed that the flush handle is located on the wrong side of the toilet in the men's restroom. *Id.* at 120-121.

47.    The estimated cost of providing a toilet with the flush handle on the open side of the toilet is $250. P's Exh. 13. It should take two hours to install the new toilet. *Id.*

48.    I observed that the toilet seat cover dispenser is not on an accessible route, and instead is mounted too high over the rear grab bar in the men's restroom. *Id.* at 122-123. The toilet paper dispenser is not located on the wall or

8

DECLARATION OF JOHN BATTISTA ISO MOTION FOR SUMMARY JUDGMENT

29

partition closest to the water closet; instead, one toilet paper dispenser is located

above the grab bar and the other is behind the rim of the toilet. *Id.* at 124-126.

49.     The estimated cost of relocating the toilet paper dispenser to a

compliant location is $75. P's Exh. 13. It should take 45 minutes to complete this

work. *Id.*

50.     The side opening compartment door does not have a clear,

unobstructed opening thirty-four inches (34") wide, instead it was measured at 32-

1/2 inches (32-1/2") in the men's restroom. *Id.* at 127-128.

51.     The estimated cost of providing a door with the required thirty-four

inches (34") of clearance is $450. P's Exh. 13. It should take four hours to

complete this work. *Id.*

52.     It is my opinion as a licensed general contractor that none of the

remediations recommended would impact the operation of the business, except

for the three days required to address the slopes on the route of travel between the

business entrances. None of the remediations recommended would impact the

economic activity of the business after they have been corrected.

DECLARATION OF JOHN BATTISTA ISO MOTION FOR SUMMARY JUDGMENT

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated:  October 22, 2021

_____
John Battista

10

Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
Kyle Wilson (SBN 323888)
kyle@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER, an individual<br><br>Plaintiff,<br><br>v.<br><br>HB MAT PROPERTIES, a California limited liability company; FUSION SUSHI, a business of unknown form; and DOES 1-10,<br><br>Defendants. | Case No.: 2:20-cv-11107-FMO-GJS<br><br>Hon. Fernando M. Olguin<br><br>**DECLARATION OF ANOUSH HAKIMI ISO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

DECLARATION OF ANOUSH HAKIMI ISO PLAINTIFF'S MSJ

32

# DECLARATION OF ANOUSH HAKIMI

I, Anoush Hakimi, declare as follows:

1.      I am an attorney of law duly licensed to practice before all courts in the State of California and am admitted to practice in the United States District Court for the Central District of California.  I am the attorney of record for James Shayler in the above-entitled proceeding, and, as such, I have knowledge of the matters contained herein.  The matters stated herein are true and correct of my own personal knowledge, except for those matters stated upon information and belief, and as to those matters, I believe them to be true and correct.  If called and sworn as a witness, I could and would testify competently hereto.

2.      Defendants filed an answer to Plaintiff's First Amended Complaint on May 24, 2021, admitting they own the property located at or about 1200 Pacific Coast Hwy, Hermosa Beach, California 90254 (the "Property") and that there is a business known as Fusion Sushi located on the Property. ECF Doc.26 at ¶¶ 2-3.

3.      When determining the value of the Property, I reviewed the real property records available on the www.propertyshark.com website ("PropertyShark"), which is an application utilized by real estate professionals to assess the market value of real property.

DECLARATION OF ANOUSH HAKIMI ISO PLAINTIFF'S MSJ

4.      According to the real property report provided by PropertyShark, the Property has an approximate market value of $6,561,876 and is subject to $69,648 in annual property taxes. A true and correct copy of the PropertyShark report for the Property as downloaded on October 15, 2021 is filed concurrently herewith as <u>Exhibit 14</u>.

5.      My office met and conferred in person with Defendant's counsel on September 2, 2021 regarding this Motion for Summary Judgment, before the Court issued the September 7, 2021 Order extending the discovery deadline, mediation deadline, and deadline for filing dispositive motions. ECF No. 45.

6.      Plaintiff decided to forgo filing the Motion for Summary Judgment on September 9, 2021 due to the extension of the deadlines, and to accommodate Defendant's request to conduct additional discovery.

7.      After Defendant conducted additional discovery, Plaintiff's counsel requested to meet and confer regarding Plaintiff's Motion for Summary Judgment.

8.      Defendant's counsel refused. A true and correct copy of the e-mail thread regarding Plaintiff's efforts to meet and confer is filed concurrently herewith as <u>Exhibit 32</u>.

//

//

DECLARATION OF ANOUSH HAKIMI ISO PLAINTIFF'S MSJ

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Dated:  October 22, 2021

_____
/s/ Anoush Hakimi
Anoush Hakimi

DECLARATION OF ANOUSH HAKIMI ISO PLAINTIFF'S MSJ

Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
Kyle Wilson (SBN 323888)
kyle@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HB MAT PROPERTIES, a California limited liability company; FUSION SUSHI, a business of unknown form; and DOES 1-10,<br><br>Defendants. | Case No.: 2:20-cv-11107-FMO-GJS<br><br>Hon. Fernando M. Olguin<br><br>**DECLARATION OF MARC FRIEDLANDER IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

1

Case No. 2:20-cv-11107-FMO-GJS

DECLARATION OF MARC FRIEDLANDER ISO PLAINTIFF'S MSJ

36

## DECLARATION OF MARC FRIEDLANDER

I, Marc Friedlander, declare as follows:

1.     I, the undersigned, am an investigator.  I was hired by The Law Office of Hakimi & Shahriari ("the firm") to conduct investigations in this case. Based upon my own experience and knowledge, I can competently testify to the following:

2.     On August 30, 2021, per the firm's request, I inspected the property located at or about 1200 Pacific Coast Highway, Hermosa Beach, CA 90254 (the "Property"). I took photographs and/or measurements, including of the paths of travel, signage, as well as the interior accommodations associated with the Property. Upon conclusion of my inspection, I provided a summary of my findings, including measurements and photographs, to the firm.

3.     Filed concurrently herewith, as Exhibits 15-32, are true and correct copies of the photos I took of the Property August 30, 2021, which reflect the conditions and/or barriers I observed that day, and outline below.

4.     I observed that the distance between the hatch lines in the access aisle adjacent to the designated disabled parking space are spaced thirty-seven inches (37") apart. Exh. 15-16.

2              Case No. 2:20-cv-11107-FMO-GJS

DECLARATION OF MARC FRIEDLANDER ISO PLAINTIFF'S MSJ

37

5.      I observed that the entrance from the public sidewalk at the steps is not accessible and is missing directional signage identifying an accessible entrance. Exh. 17.

6.      I observed that there are no handrails on the stairway from the public sidewalk. *Id.*

7.      I observed that the accessible path of travel between business entrances had cross slopes greater than 2%. Exh. 18-19.

8.      I observed that the concrete expansion joints in the route of travel are spaced up to one inch (1") apart. Exh. 20.

9.      I observed an abrupt change in level adjacent to the accessible parking space with a drop-off of five and a half inches (5.5") and slopes up to 36.2%. Exh. 21-23.

10.      I observe that opening force for the restroom door was sixteen pounds (16 lbs.).

11.      I observed that the front entrance door threshold measures one-inch (1") in height. Exh. 24.

12.      I observed that the restrooms do not have directional signage indicating that they are accessible. Exh. 25.

13.      I observed that the door operating hardware inside of the restrooms is not accessible.

3                          Case No. 2:20-cv-11107-FMO-GJS

DECLARATION OF MARC FRIEDLANDER ISO PLAINTIFF'S MSJ

14.     I observed that the maneuvering clearance on the pull side of the restroom door measures only nine-and-one-half inches (9.5"). Exh. 26.

15.     I observed that the compartment door in the men's restroom is not self-closing.

16.     I observed that the door handle on the exterior side of the toilet compartment is too small, and the door handle on the interior side of the door is missing completely. Exh. 27-28.

17.     I observed that the flush handle is located on the wrong side of the toilet. Exh. 29.

18.     I observed that the toilet seat cover is not accessible as it is located fifty-six inches (56") above the ground. Exh. 30.

19.     I observed that the toilet compartment door does not have a clear, unobstructed opening thirty four inches (34") wide.

20.     Based on my experience in conducting many such inspections, it was readily apparent to me that the foregoing conditions or barriers at the property were (are) not in compliance with the requirements of the Americans with Disabilities Act (ADA).

//

//

4                   Case No. 2:20-cv-11107-FMO-GJS

DECLARATION OF MARC FRIEDLANDER ISO PLAINTIFF'S MSJ

I declare under the penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on October 22, 2021, at Los Angeles, California.

_____

Marc Friedlander

DECLARATION OF MARC FRIEDLANDER ISO PLAINTIFF'S MSJ

# EXHIBIT 1

## LUMBAR SPINE MEDICAL SOURCE STATEMENT

From. BEVERLY 🦫 HOSPITAL

Re:    JAMES Shaylere (Name of Patient)

_____ (Social Security No.)

Please answer the following questions concerning your patient's impairments. *Attach relevant treatment notes, radiologist reports, laboratory and test results as appropriate.*

1. Frequency and length of contact: _____ 8 days

2. Diagnoses: multiply levels of Diffual Disc Bulge with impruxement of the L5 nerve Root.

3. Prognosis: _____

4. Identify the *clinical findings*, laboratory and test results that show your patient's medical impairments:

   MRI _____

5. Have your patient's impairments lasted or can they be expected to last at least twelve months?                                        ☒ Yes          ☐ No

6. Identify all of your patient's *symptoms*, including pain, insomnia, fatigue, etc.:

   unable to stand an walk over 15 minutes pain at 10 level.

7. If your patient has pain:

   a. Characterize the nature, location, radiation, frequency, precipitating factors, and severity of your patient's pain:

      pain Runs down Right leg, and lower spine.

   b. Does your patient have neuro-anotomic distribution of pain?
                                        ☐ Yes          ☒ No

From Social Security Disability Practice by Thomas E. Bush, copyright James Publishing. Used with permission.
For information 800-440-4780 or www.JamesPublishing.com.

c.   Identify any positive objective signs:

☐ Reduced range of motion: Description _____

☑ Positive supine straight leg raising test:    ☐ Swelling
     Left at 15 ° Right at 20 °           ☑ Muscle spasm
☑ Positive seated straight leg raising test     ☐ Motor loss
☐ Abnormal gait                       ☐ Muscle atrophy
☑ Sensory loss                         ☑ Muscle weakness
☐ Reflex loss                         ☐ Impaired appetite
☑ Tenderness                        ☐ Weight change
☐ Crepitus                         ☐ Impaired sleep

Other signs: _____

8.   Do emotional factors contribute to the severity of your patient's symptoms and functional limitations?                         ☐ Yes     ☑ No

9.   Identify the side effects of any medication that may have implications for working, e.g., dizziness, drowsiness, stomach upset, etc.:

_____

_____

10.   As a result of your patient's impairments, estimate your patient's functional limitations if your patient were placed in a *competitive work situation:*

a.   How many city blocks can your patient walk without rest or severe pain?   *no walking*

b.   Please circle the hours and/or minutes that your patient can sit *at one time,* e.g., before needing to get up, etc.

     **Sit:**      0   5   10   15   20 (30) 45         1   2   More than 2
                       Minutes                           Hours

c.   Please circle the hours and/or minutes that your patient can stand *at one time*, e.g., before needing to sit down, walk around, etc.

     **Stand:**     0   5   10 (15) 20   30   45         1   2   More than 2
                       Minutes                           Hours

d.   Please indicate how long your patient can sit and stand/walk *total in an 8-hour working day* (with normal breaks):

     **Sit**     **Stand/walk**
     ☑        ☑       less than 2 hours
     ☐        ☐       about 2 hours
     ☐        ☐       about 4 hours
     ☐        ☐       at least 6 hours

e.   Does your patient need a job that permits shifting positions *at will* from sitting, standing or walking?                       ☑ Yes     ☐ No

f. Does your patient need to include periods of walking around during an 8-hour working day?  ☑ Yes   ☐ No

If yes, how **often** must your patient walk?   How **long** must your patient walk each time?

1  5  10  15  20  30  45  60  90        1  2  3  4  5  6  7  8  9  10  11  12  13  14  15
Minutes                                              Minutes

g. Will your patient sometimes need to take unscheduled breaks during a working day?   ☑ Yes   ☐ No

If yes,   1) how **often** do you think this will happen?        5 times per day

2) how **long** (on average) will your patient have to rest before returning to work?        15 mins

h. With prolonged sitting, should your patient's leg(s) be elevated?   ☑ Yes   ☐ No

If yes,   1) how **high** should the leg(s) be elevated?        _____

2) if your patient had a sedentary job, **what percentage of time** during an 8-hour working day should the leg(s) be elevated?        60 %

i. While engaging in occasional standing/walking, must your patient use a cane or other assistive device?   ☑ Yes   ☐ No

*For this and other questions on this form, "rarely" means 1% to 5% of an 8-hour working day; "occasionally" means 6% to 33% of an 8-hour working day; "frequently" means 34% to 66% of an 8-hour working day.*

j. How many pounds can your patient lift and carry in a competitive work situation?

|                  | Never | Rarely | Occasionally | Frequently |
|------------------|-------|--------|--------------|------------|
| Less than 10 lbs.|       | ☑      | ☐            | ☐          |
| 10 lbs.          | ☐     | ☐      | ☐            | ☐          |
| 20 lbs.          | ☑     | ☐      | ☐            | ☐          |
| 50 lbs.          | ☑     | ☐      | ☐            | ☐          |

k. How often can your patient perform the following activities?

|                | Never | Rarely | Occasionally | Frequently |
|----------------|-------|--------|--------------|------------|
| Twist          | ☑     | ☐      | ☐            | ☐          |
| Stoop (bend)   | ☑     | ☐      | ☐            | ☐          |
| Crouch/ squat  | ☑     | ☐      | ☐            | ☐          |
| Climb ladders  | ☑     | ☐      | ☐            | ☐          |
| Climb stairs   | ☑     | ☐      | ☐            | ☐          |

l. If your patient has significant limitations with reaching, handling or fingering, please indicate the percentage of time during an 8-hour working day that your patient can use hands/fingers/arms for the following activities:

|         | HANDS: Grasp, Turn Twist Objects | FINGERS: Fine Manipulations | ARMS: Reaching In Front of Body | ARMS: Reaching Overhead |
|---------|----------------------------------|-----------------------------|----------------------------------|-------------------------|
| **Right:** | %                              | %                           | %                                | %                       |
| **Left:**  | %                              | %                           | %                                | %                       |

m. How much is your patient likely to be *"off task"*? That is, what percentage of a typical workday would your patient's symptoms likely be severe enough to interfere with *attention and concentration* needed to perform even simple work tasks?

☐ 0%   ☐ 5%   ☐ 10%   ☐ 15%   ☐ 20%   ☑ 25% or more

n. To what degree can your patient tolerate work stress?

☑ Incapable of even "low stress" work          ☐ Capable of low stress work
☐ Capable of moderate stress - normal work   ☐ Capable of high stress work

Please explain the reasons for your conclusion: _____

o. Are your patient's impairments likely to produce "good days" and "bad days"?
☑ Yes          ☐ No

If yes, assuming you patient was trying to work full time, please estimate, on the average, how many days per month your patient is likely to be absent from work as a result of the impairments or treatment:

☑ Never                              ☐ About three days per month
☐ About one day per month            ☐ About four days per month
☐ About two days per month           ☐ More than four days per month

11. Are your patient's impairments (physical impairments plus any emotional impairments) *reasonably consistent* with the symptoms and functional limitations described in this evaluation?          ☑ Yes          ☐ No

If no, please explain: _____

12. Please add an additional page to describe any other limitations (such as psychological limitations, limited vision, difficulty hearing, need to avoid temperature extremes, wetness, humidity, noise, dust, fumes, gases or hazards, etc.) that would affect your patient's ability to work at a regular job on a sustained basis.

2/11/2020
*Date*

Signature
BEVERLY HOSPITAL

*Printed/Typed Name:* _____

7-35                   *Address:*          Charles E. Ananian, D.P.M.
11/09                                    _____
§231.2

_____

45

# EXHIBIT 2

# JOHN D. PLUT, M.D.

A Medical Corporation

Diplomate, American Board of Orthopedic Surgery

Joint Replacement Surgery
Sports Medicine, Arthroscopy, Fractures

## ORTHOPEDIC FOLLOW-UP EVALUATION

December 8, 2016

Referral Source: Dr. Hopper, Douglas

Re: Shayler, James

### INTERVAL HISTORY

This 59-year-old patient was seen on November 29, 2016. The patient has been seen for many visits over the last few months and he presented with complaints of pain referable to both knees. The patient has had a Euflex injections into both knees. In addition, he has complained of low back pain with numbness and tingling into his left leg. In spite of this patient continues to work as a paralegal.

### PHYSICAL EXAMINATION

Range of motion of both knees is limited range of motion associated with crepitation and pain. Because of his young age the patient was requested and received a Euflexa to both knees. This gave some temporary relief but has not been productive of significant long-term pain relief. Patient has been taking Voltaren and oxycodone for anti-inflammatory affect and pain relief. The patient has limited range of motion of his lumbar spine secondary to pain with an associated left lower extremity sciatica.

### REVIEW OF SPECIAL STUDIES

Standing AP of both knees reveals a severe right varus osteoarthritis and a moderately severe left valgus osteoarthritis.

### CLINICAL DIAGNOSIS

Bilateral osteoarthritis knees, symptomatic

Low back pain with subjective left sciatica

# EXHIBIT 3

**Thomas McCloy, M.D.**
**1045 Atlantic Avenue #1019**
**Long Beach, CA 90813**
**Tel: 562-437-6213**
**Fax:562-437-6103**

**Name: James Shayler**
**DOB:** ▮1955
**Age: 64**
**Date of Visit: 1/15/2020**

**Established Patient**
**Follow-Up Visit**

Problem list reviewed.  updated (01/15/2020 US/Pacific)

**HISTORY OF PRESENT ILLNESS:**

He was a fire fighter who retired because of a fracture of the right ulnar bone that caused nerve damage and
hand atrophy. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He also has spinal stenosis and chronic sciatic nerve pain. .
He had been taking oxycodone twice a day but thinks he could get by on hydrocodone... ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He has had bilateral knee replacements.

**ALLERGIES:**

**Recorded By Collier, Julia OM on 01/15/2020 9:17 AM (US/Pacific)**
▮▮▮▮▮▮▮▮▮▮▮▮ - 01/15/20 9:17:52 AM US/Pacific

▮▮▮▮▮▮▮▮▮▮▮

**CURRENT MEDICATIONS:**

**Recorded By Mccloy, Thomas MD on 01/15/2020 1:45 PM (US/Pacific)**

Medications List Reviewed (01/15/20 9:36:42 AM US/Pacific)

Norco Oral Tablet 10-325 MG (1/16/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: No Refills  Rx
quantity: 60

**Recorded By Rebatet, Markislev on 01/15/2020 9:36 AM (US/Pacific)**

Medications List Reviewed (01/15/20 9:36:42 AM US/Pacific)

DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG (1/15/2020)  Take 1 capsule every night at
bedtime for 30 day(s)  Refills: No Refills  Rx quantity: 30

Gabapentin Oral Capsule 400 MG (1/15/2020)  Take 1 capsule three times a day for 30 day(s)  Refills: No
Refills  Rx quantity: 90

Methocarbamol Oral Tablet 500 MG (1/15/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: No Refills  Rx
quantity: 60

Medication List Reviewed and Reconciled  updated (01/15/2020 US/Pacific)

**PAST MEDICAL HISTORY:**

**ADVANCED DIRECTIVES:**

**SURGICAL HISTORY:**
bilateral total knee replacements

Page 1/4

elbow fracture surgery
**SOCIAL HISTORY:**

**FAMILY HISTORY:**

**Preventive Care:**

**REVIEW OF SYSTEMS:**

**VITAL SIGNS:**
**Recorded By Rebatet, Markislev on 01/15/2020 9:05 AM (US/Pacific)**

Recorded By McCloy, Thomas MD on 01/15/2020 9:05 AM (US/Pacific)

**PHYSICAL EXAMINATION:**

**DIAGNOSIS:**
(338.4, G89.4) - Chronic pain syndrome

(724.3, M54.30) - Sciatica

**PLAN:**
REFILL MEDICDATION
RETURN TWO MONTHS

**Orders Written Today:**



**Prescriptions Written Today:**
Norco Oral Tablet 10-325 MG
Take 1 tablet twice a day for 30 day(s)
Refills: No Refills
Rx quantity: 60,
DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG
Take 1 capsule every night at bedtime for 30 day(s)
Refills: 3
Rx quantity: 30,
Gabapentin Oral Capsule 400 MG
Take 1 capsule three times a day for 30 day(s)
Refills: 3
Rx quantity: 90,



Methocarbamol Oral Tablet 500 MG
Take 1 tablet twice a day for 30 day(s)
Refills: 3
Rx quantity: 60,

Page 3/4

Thomas E. McClong

**Electronically Signed By: Thomas Mccloy MD**
Electronically Signed 1/16/2020 2:25:50 PM

# EXHIBIT 4

**Thomas McCloy, M.D.**
**1045 Atlantic Avenue #1019**
**Long Beach, CA 90813**
**Tel: 562-437-6213**
**Fax:562-437-5103**

**Name: James Shayler**
**DOB:** ▮**/1955**
**Age: 64**
**Date of Visit: 3/2/2020**

**Established Patient**

Problem list reviewed.   (01/15/2020 US/Pacific)

**HISTORY OF PRESENT ILLNESS:**

For over two  month he has had a deep hole in the callus at the middle of metatarsal heads of jthe foot.  He has
neuropathy so he doesn't feel it. j lit started when he was walking in shoes without socks..

**ALLERGIES:**

**Recorded By Collier, Julia OM on 01/15/2020 9:17 AM (US/Pacific)**

**CURRENT MEDICATIONS:**

**Recorded By Mccloy, Thomas MD on 01/16/2020 1:46 PM (US/Pacific)**

Norco Oral Tablet 10-325 MG (1/16/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: No Refills  Rx
quantity: 60

**Recorded By Rebatet, Markislev on 01/15/2020 9:36 AM (US/Pacific)**

DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG (1/15/2020)  Take 1 capsule every night at
bedtime for 30 day(s)  Refills: 3  Rx quantity: 30

Gabapentin Oral Capsule 400 MG (1/15/2020)  Take 1 capsule three times a day for 30 day(s)  Refills: 3  Rx
quantity: 90



Methocarbamol Oral Tablet 500 MG (1/15/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: 3  Rx quantity:
60

Medication List Reviewed and Reconciled   (01/15/2020 US/Pacific)

**PAST MEDICAL HISTORY:**

**SURGICAL HISTORY:**
bilateral total knee replacements
elbow fracture surgery

**SOCIAL HISTORY:**

Page 1/2

**FAMILY HISTORY:**

**Preventive Care:**

**VITAL SIGNS:**
**Recorded By Canaria, Cyndi MA on 03/02/2020 2:37 PM (US/Pacific)**
*03/02/2020 2:36 PM (US/Pacific)*

**Recorded By Mccloy, Thomas MD on 03/02/2020 2:36 PM (US/Pacific)**

**PHYSICAL EXAMINATION:**

Skin abnormal
deep, clean ulcer in a callus in the middle of the metatarsal heads..
**DIAGNOSIS:**

(338.4, G89.4) - Chronic pain syndrome
(724.3, M54.30) - Sciatica
(355.9, G62.9) - Neuropathy
**PLAN:**
REFER TO PODIATRIST

*Thomas E. McCloy*

**Electronically Signed By: Thomas Mccloy MD**
Electronically Signed 3/3/2020 3:56:47 PM

55

# EXHIBIT 5

**Thomas McCloy, M.D.**
1045 Atlantic Avenue #1019
Long Beach, CA 90813
Tel: 562-437-6213
Fax:562-437-5103

**Name: James Shayler**
**DOB:** █████/1965
**Age: 64**
**Date of Visit: 4/14/2020**

**Established Patient**
**Follow-Up Visit**

Problem list reviewed. updated (04/14/2020 US/Pacific)
**HISTORY OF PRESENT ILLNESS:**
He continues to have a deep hole in the right heel and he sees a podiatrist every week. The podiatrist pares
down the callus and irrigates it. There is no infection of the area.. He also has pain In the right arm and hand
from a old ulnar nerve injury.. He has chronic sciatic nerve pain . He is taking about two Norco daily.

**ALLERGIES;**
**Recorded By McCloy, Float on 04/14/2020 1:35 PM (US/Pacific)**

**CURRENT MEDICATIONS:**
**Recorded By McCloy, Float on 04/14/2020 1:35 PM (US/Pacific)**
Medications List Reviewed (04/14/20 1:35:39 PM US/Pacific)

Medication List Reviewed and Reconciled  updated (04/14/2020 US/Pacific)
**Recorded By Mccloy, Thomas MD on 04/06/2020 5:10 PM (US/Pacific)**
Medications List Reviewed (04/14/20 1:35:39 PM US/Pacific)

Norco Oral Tablet 10-325 MG (3/11/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: No Refills  Rx quantity:
60
**Recorded By Rebatet, Markislev on 01/15/2020 9:36 AM (US/Pacific)**
Medications List Reviewed (04/14/20 1:35:39 PM US/Pacific)
DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG (1/15/2020)  Take 1 capsule every night at
bedtime for 30 day(s)  Refills: 3  Rx quantity: 30
Gabapentin Oral Capsule 400 MG (1/15/2020)  Take 1 capsule three times a day for 30 day(s)  Refills: 3  Rx
quantity: 90

Methocarbamol Oral Tablet 500 MG (1/15/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: 3  Rx quantity:
60

**PAST MEDICAL HISTORY:**

**SURGICAL HISTORY:**

Page 1/3

bilateral total knee replacements
elbow fracture surgery
**SOCIAL HISTORY:**

**FAMILY HISTORY:**

**Preventive Care:**

**VITAL SIGNS:**
**Recorded By Mccloy, Thomas MD on 04/14/2020 1:33 PM (US/Pacific)**

*04/14/2020 1:33 PM (US/Pacific)*

PHYSICAL EXAMINATION:

**DIAGNOSIS:**

(338.4, G89.4) - Chronic pain syndrome
(355.9, G62.9) - Neuropathy
(724.3, M54.30) - Sciatica
**PLAN:**
MONTHLY SUPPLY OF MEDICATION
RETURN THREE MONTHS.

*Thomas E. McCloy*

**Electronically Signed By: Thomas Mccloy MD**

Electronically Signed 4/14/2020 2:10:27 PM

59

# EXHIBIT 6

Thomas McCloy, M.D.
1045 Atlantic Avenue #1019
Long Beach, CA 90813
Tel: 562-437-6213
Fax:562-437-5103

Name: James Shayler
DOB:  1955
Age: 64
Date of Visit: 5/18/2020

**Established Patient**

Problem list reviewed.  (04/14/2020 US/Pacific)

**HISTORY OF PRESENT ILLNESS:**

He was hospitalized at Memorial Hospital. for osteomyelitis.  He was seen by an infectious disease doctor and a
podiatrist who are following him now as a out-patient.  He has a indwelling IV that pumps Maxipime four times a
day.  He was also given metronidazole 500mg po q8h.  He relates the hole in the sole of jthe foot to an
automobile accident  November 10, 2019, where his foot slipped off the brake pedal and caused a laceration.
**ALLERGIES:**
Recorded By McCloy, Float on 04/14/2020 1:35 PM (US/Pacific)

**CURRENT MEDICATIONS:**
Recorded By Mccloy, Thomas MD on 05/13/2020 11:31 AM (US/Pacific)

HYDROcodone-Acetaminophen Oral Tablet 10-325 MG (5/13/2020) Take 1 tablet twice a day for 30 day(s)
Refills: 1  Rx quantity: 60
Recorded By McCloy, Float on 04/14/2020 1:35 PM (US/Pacific)

Medication List Reviewed and Reconciled  (04/14/2020 US/Pacific)

Recorded By Rebatet, Markislev on 01/15/2020 9:36 AM (US/Pacific)
DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG (1/15/2020) Take 1 capsule every night at
bedtime for 30 day(s) Refills: 3  Rx quantity: 30
Gabapentin Oral Capsule 400 MG (1/15/2020) Take 1 capsule three times a day for 30 day(s) Refills: 3  Rx
quantity: 90

Methocarbamol Oral Tablet 500 MG (1/15/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: 3  Rx quantity:
60

**PAST MEDICAL HISTORY:**

**SURGICAL HISTORY:**
bilateral total knee replacements
elbow fracture surgery
**SOCIAL HISTORY:**

Page 1/2



**FAMILY HISTORY:**



**Preventive Care:**



**VITAL SIGNS:**
**Recorded By Mccloy, Thomas MD on 05/18/2020 2:22 PM (US/Pacific)**

*05/18/2020 2:11 PM (US/Pacific)*

**PHYSICAL EXAMINATION:**



**DIAGNOSIS:**
(355.0, G57.00) - Sciatic nerve disease

(355.9, G62.9) - Neuropathy
(730.20, M86.9) - Osteomyelitis
**PLAN:**

Return 8 weeks.
Followup by Infectious Disease specialist and Podiatry

*Thomas E. McCloy*

**Electronically Signed By: Thomas Mccloy MD**
Electronically Signed 5/18/2020 3:26:32 PM

# EXHIBIT 7

| Patient | Provider | Practice |
|---|---|---|
| Shayler, James | Su, Henry | Su, Henry MD |
| Male, 1955 (64) | 1043 Elm Ave# 301, Long Beach CA 90813 | |
| ID Chart Number | Ph: 562-6842560, Fax: 562-6842570 | |
| PCP: Thomas McCloy MD | | |

Henry Su, MD
Board Certified in Internal Medicine
and Infectious Disease
1043 Elm Avenue Suite 301, Long Beach, CA 90813
Phone (562) 684-2560 - Fax (562) 684-2570

**Name: James Shayler**
**DOB:** 1955
**Age:** 64
**Date of Visit:** 7/2/2020

**PCP Provider:**
Thomas Elwood McCloy, MD

## HISTORY OF PRESENT ILLNESS:
f/u hospital for R foot infection and osteomyelitis,
on 5/12 due to E faecalis changed cefepime to unasyn. has pump.
still getting IV antibiotics, through Gibraltar home health, every other.
LUE PICC starting to get a irritated and erythematous, extended extra 2 weeks last day today, see phone
swelling pain redness has continued to improve, no redness, wound smaller.
seeing a new wound care center, amputation prevention center in Beverly center, taking over, thinking about using hyperbaric therapy,
seeing every week,

## CURRENT MEDICATIONS:
HYDROcodone-Acetaminophen Oral Tablet 10-325 MG (6/9/2020)  Take 1 tablet twice a day for 30 day(s)
DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG (6/9/2020)  Take 1 capsule every night at bedtime for 30 day(s)

Gabapentin Oral Capsule 400 MG (1/15/2020)  Take 1 capsule three times a day for 30 day(s)

Methocarbamol Oral Tablet 500 MG (1/15/2020)  Take 1 tablet twice a day for 30 day(s)

## SURGICAL HISTORY:
Prior Surgery:
bilateral total knee replacements
elbow fracture surgery

## SOCIAL HISTORY:

Advanced Care Planning:

64

**FAMILY HISTORY:**

**PREVENTIVE CARE:**

**REVIEW OF SYSTEMS:**

<u>Musculoskeletal:</u>
 joint pain,
<u>Neurologic</u>
 numbness.
<u>Skin:</u>
 skin ulcer,

**VITAL SIGNS:**

*07/02/2020 1:55 PM (US/Pacific)*

**PHYSICAL EXAMINATION:**

<u>Musculoskeletal:</u>
 Feet abnormal
<u>Skin:</u>

Skin lesions LUE PICC exit site with minimal erythema likely tape related, no warmth tenderness

R foot dorsal distal foot and toes still dark erythema, blanching, no tenderness, no warmth, there is still a hyperkeratotic ulcer over the 2nd plantar MT head with packing, serosanguinous drainage, and small ulcer on dorsal surface of foot 0.5 cm, with fibrinous exudate and serous drainage, mild induration

## DIAGNOSIS:

(G57.00) - Sciatic nerve disease

Main risk factor for initial development of ulcer and progression to infection.

(G89,4) - Chronic pain syndrome

(G62.9) - Neuropathy

Main risk factor for initial development of ulcer and progression to infection.

(M86.271) - Subacute osteomyelitis, right ankle and foot

MRI shows osteomyelitis of the first through third metatarsals of the right foot as well as the proximal phalanges of the second and third digits, there is also soft tissue cellulitis and a sterile gas pockets without abscess between the second and third digits. No sepsis or systemic signs of infection. Status post debridement 5/8 cultures eventually grew only E faecalis and antibiotics changed to uNASYN, planned 6 weeks from debridement until 6/17.

his inflamatory markers from week 5 were technically within expected gaols but due to inflammation he requested reasonably to extend abx to 8 weeks total which he completed yesterday 7/1. ok to remove picc at home with gibraltar home health tornorrow, signed paper order. there is still residual inflammation and ulcer, we'll extend antibiotics but convert to PO. he is seeing a new podiatrist and will forward me the contact information, he says they took a culture last week and wil have them forward to me.

## PLAN:

labs today, including Inflammatory markers to establish baseline

ok to remove picc, signed

start augmentin plan additional 8 weeks

Follow up visit 1 month

### Prescriptions Written Today:

Amoxicillin-Pot Clavulanate Oral Tablet 875-125 MG Take 1 tablet twice a day for 30 day(s) Refills: 1  Rx quantity: 60

### Orders Written Today:



**Electronically Signed By: Henry Su MD**
Electronically signed: 7/2/2020.2:17:18 PM

# EXHIBIT 8

**Thomas McCloy, M.D.**
1045 Atlantic Avenue #1019
Long Beach, CA 90813
Tel: 562-437-6213
Fax:562-437-5103

**Name: James Shayler**
**DOB:** ▮/1965
**Age:** 64
**Date of Visit: 7/14/2020**

**Established Patient**
**Follow-Up Visit**

Problem list reviewed. updated (07/14/2020 US/Pacific)
**HISTORY OF PRESENT ILLNESS:**
He has made progress and he is now off IV antibiotics and is now on pills. ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮ He is now in a walking boot. The hole in
the heel has almost sealed over..
**ALLERGIES:**
**Recorded By Collier, Julia OM on 07/14/2020 1:54 PM (US/Pacific)**
▮▮▮▮▮▮▮▮▮▮ 07/14/20 1:54:54 PM US/Pacific

▮▮▮▮▮▮▮

**CURRENT MEDICATIONS:**
**Recorded By Collier, Julia OM on 07/14/2020 1:54 PM (US/Pacific)**
Medications List Reviewed (07/14/20 1:54:54 PM US/Pacific)

Medication List Reviewed and Reconciled  updated (07/14/2020 US/Pacific)
**Recorded By Mccloy, Thomas MD on 07/13/2020 11:40 AM (US/Pacific)**
Medications List Reviewed (07/14/20 1:54:54 PM US/Pacific)

HYDROcodone-Acetaminophen Oral Tablet 10-325 MG (7/8/2020)  Take 1 tablet twice a day for 30 day(s)
Refills: No Refills  Rx quantity: 60
DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG (6/9/2020)  Take 1 capsule every night at
bedtime for 30 day(s)  Refills: 3  Rx quantity: 30

**Recorded By Su, Henry MD on 07/02/2020 2:12 PM (US/Pacific)**
Medications List Reviewed (07/14/20 1:54:54 PM US/Pacific)
Amoxicillin-Pot Clavulanate Oral Tablet 875-125 MG (7/2/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: 1
Rx quantity: 60
**Recorded By Rebatet, Markislev on 01/15/2020 9:35 AM (US/Pacific)**
Medications List Reviewed (07/14/20 1:54:54 PM US/Pacific)
Gabapentin Oral Capsule 400 MG (1/15/2020)  Take 1 capsule three times a day for 30 day(s)  Refills: 3  Rx
quantity: 90

Methocarbamol Oral Tablet 500 MG (1/15/2020)  Take 1 tablet twice a day for 30 day(s)  Refills: 3  Rx quantity:
60
**PAST MEDICAL HISTORY:**

**SURGICAL HISTORY:**
bilateral total knee replacements
elbow fracture surgery
**SOCIAL HISTORY:**

**FAMILY HISTORY:**

**Preventive Care:**

**VITAL SIGNS:**
**Recorded By Mccloy, Thomas MD on 07/14/2020 3:51 PM (US/Pacific)**

*07/14/2020 1:37 PM (US/Pacific)*

**PHYSICAL EXAMINATION:**

**DIAGNOSIS:**

CHRONIC PAIN
NEUROPATHY

**Orders Written Today:**

Page 2/3

*Thomas E. McClory*

**Electronically Signed By: Thomas Mccloy MD**
Electronically Signed 7/14/2020 3:56;43 PM

# EXHIBIT 9

**Thomas McCloy, M.D.**
1045 Atlantic Avenue #1019
Long Beach, CA 90813
Tel: 562-437-6213
Fax:562-437-5103

**Name: James Shayler**
**DOB:** 1955
**Age:** 64
**Date of Visit:** 9/9/2020

**Established Patient**
**Follow-Up Visit**

Problem list reviewed.   (07/14/2020 US/Pacific)
**HISTORY OF PRESENT ILLNESS:**
He says that his heel is almost healed.  He is going to Beverly Hospital for wound care and the are doing skin
grafts with cadaver tissue. ███████████████████████████████████████████████████ He
controls the neuropathy pain with duloxetine 60mg and Norco.
**ALLERGIES:**
**Recorded By Collier, Julia OM on 07/14/2020 1:54 PM (US/Pacific)**

███████████████

**CURRENT MEDICATIONS:**

**Recorded By Mccloy, Thomas MD on 09/09/2020 11:55 AM (US/Pacific)**
HYDROcodone-Acetaminophen Oral Tablet 10-325 MG (9/9/2020) Take 1 tablet by mouth twice a day for 30
days Refills: No Refills Rx quantity: 60
DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG (9/9/2020) Take 1 capsule every night at
bedtime for 30 day(s) Refills: No Refills Rx quantity: 30

████████████████████████████████████████████████████████

**Recorded By Su, Henry MD on 07/29/2020 1:39 PM (US/Pacific)**
Amoxicillin-Pot Clavulanate Oral Tablet 875-125 MG (7/29/2020) Take 1 tablet twice a day for 30 day(s) Refills:
No Refills Rx quantity: 60
**Recorded By Collier, Julia OM on 07/28/2020 11:51 AM (US/Pacific)**

████████████████████████████████████████████████████████

Medication List Reviewed and Reconciled   (07/14/2020 US/Pacific)
**Recorded By Rebatet, Markislev on 01/15/2020 9:35 AM (US/Pacific)**
Gabapentin Oral Capsule 400 MG (1/15/2020) Take 1 capsule three times a day for 30 day(s) Refills: 3 Rx
quantity: 90

████████████████████████████████████████████████████████

Methocarbamol Oral Tablet 500 MG (9/9/2020) Take 1 tablet twice a day for 30 day(s) Refills: 3 Rx quantity: 60
**PAST MEDICAL HISTORY:**

███████████████

**SURGICAL HISTORY:**
bilateral total knee replacements
elbow fracture surgery

**SOCIAL HISTORY:**

**FAMILY HISTORY:**

**Preventive Care:**

**VITAL SIGNS:**
**Recorded By Mccloy, Thomas MD on 09/09/2020 12:08 PM (US/Pacific)**

*09/09/2020 10:50 AM (US/Pacific)*

**PHYSICAL EXAMINATION:**

**DIAGNOSIS:**

(355.0, G57.00) - Sciatic nerve disease

(338.4, G89.4) - Chronic pain syndrome
(355.9, G62.9) - Neuropathy

**Prescriptions Written Today:**
DULoxetine HCl Oral Capsule Delayed Release Particles 60 MG
Take 1 capsule once a day
Refills: 3
Rx quantity: 30,

Methocarbamol Oral Tablet 500 MG
Take 1 tablet twice a day for 30 day(s)
Refills: 3
Rx quantity: 60

**Immunizations Given Today:**

**Patient Education Given Today:**

*Thomas E. McClory*

**Electronically Signed By: Thomas Mccloy MD**
Electronically Signed 9/9/2020 12:10:14 PM

Page 3/3

# EXHIBIT 10



# EXHIBIT 11



REMOVE FROM MIRROR BEFORE DRIVING VEHICLE
**CALIFORNIA**



"WARNING: The illegal use of a disabled parking placard could result in a maximum fine of $4,200."

**PARKING PLACARD**

**DISABLED PERSON**

# EXPIRES JUNE 30

# 2021

PURCHASE OF FUEL (Business & Professions Code 13660) State law requires service stations to refuel a disabled person's vehicle at self-service rates, except at service facilities with only one employee on duty.

# EXHIBIT 12

# Site Accessibility Evaluation

## Americans with Disabilities Act
## And
## Title 24 And Part 2 - California Building Code



**Fusion Sushi**

**1200 CA-1**
**Hermosa Beach, CA 90254**

**Accessibility Evaluation**

*Inspection Date: 04/01/2021*
*Inspector: John Battista*

**Prepared By**



**ADA Compliance Masters, Inc.**

**(818) 470 - 4344**
**adacompliancemasters.com**

Law Office of Hakimi & Shahriari

04/09/2021

Dear Ani Avetisayn,

Thank you for the opportunity to be of service to you by performing an accessibility evaluation for the Fusion Sushi located at 1200 CA-1, Hermosa Beach, CA 90254. The facility was inspected on 04/01/2021.

PROPERTY INFORMATION

The subject property is a Restaurant located in a commercial center with an outdoor dining area and parking provided for the public.

REPORT SCOPE

This report seeks to identify construction-related barriers within the inspected facility which customers with disabilities may encounter and which may prevent full and equal access to goods and services.

AREAS REVIEWED

1. Route from the public right of way to the accessible entrance(s)
2. Route from the accessible parking to the accessible entrance(s)
3. Accessible parking area(s)
4. Interior public spaces of the business

ELEMENTS NOT INCLUDED IN THE INSPECTION

The following items are not included in this report as they require specialized equipment or expertise to evaluate:

Slip-resistance of walking surfaces. Alarm systems and illuminated exit signs are not tested for functionality or for the required back-up power supplies. Alarm decibels, frequency and strobe foot-candles are not included within the scope of this inspection. Braille is not inspected with regard to the information displayed and the required size and spacing of dots, cells and columns. Color contrast of signage and detectable warning surfaces are not measured. Reinforcement and structural strength of grab bars, handrails and guards are not included within the scope of this inspection.

STANDARDS RELIED ON

Current Standards (May be more Restrictive than Applicable)
2010 Federal ADAS
2016 California Building Code, Volume 2, Part 1, Chapter 11B

ASSESSMENT OF READILY ACHIEVABLE BARRIER REMOVAL

This report does NOT include an assessment of readily-achievable barrier removal. The CASp has NOT made a determination of Readily Achievable Barrier Removal Items.

TOOLS USED

The following tools are used to take measurements and verify conditions:

1. 25' tape measure
2. 2' Digital Smart Level
3. Door Pressure Gauge
4. Digital Camera

FINAL COMMENTS

This facility was found to have violations with accessibility compliance and has a status of "Inspected by a CASp".

We recommended that all barriers that are identified in this evaluation that are readily achievable, be removed as soon as possible with other barriers being removed as they become readily achievable. A barrier removal plan should be developed to assist in planning the removal of all barriers that are not currently "readily achievable" to remove.

In order to be eligible for Qualified Defendant status under California Civil Code Section 55.52(a)(8) and receive the benefits of Senate Bill 1608 & 1186, you must submit to ADA Compliance Masters, Inc a schedule of completion for each of the barriers identified in this report within a reasonable time frame as determined by you. The Estimated Time-Line for Barrier Removal sheet is provided at the end of your CASp report. This must be filled out and returned for inclusion in your report or you will lose your "Qualified Defendant Status" and not be eligible for the legal benefits provided under Senate Bill 1608 & 1186.

To help with this, we have identified all barriers on a finding by finding basis with a priority identifier as follows:

Priority 1 – High: Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)

Priority 2 – Important: Should be completed as soon as possible. (Includes; Findings that would remove barriers to the greatest number of people to your goods and services)

Priority 3 – Moderate: Should be completed as soon as possible, but there may be other items that will provide greater access to persons with disabilities. (Includes; Findings that have a high financial impact on the entity in relationship to the degree of access provided)

Priority 4 – Low: Should be completed as soon as possible due to being a technical violation, but may not result in providing greater access to persons with disabilities. (Includes; Findings that are technically violations but provide a moderate to low increase in accessibility compared to the financial impact on the entity)

Periodic maintenance to ensure continued accessibility is essential in providing a safe and usable environment. Parking lot markings, signage, door opening pressures, and maintaining clear floor space at doors and other elements and fixtures, available to the public, must be part of an ongoing maintenance schedule.

The contents of this report are an interpretation and opinion of the CASp professional. No guarantee of complete accessibility is meant to be construed from this report. This report is a summary of the findings noted at the time of the inspection. Applicable State and Federal accessibility guidelines should always be followed, and a licensed design professional should be consulted, prior to performing any modifications. We recommend using a properly licensed contractor specializing in accessibility upgrades/modifications for any work performed.

If you have any questions regarding this report or would like to schedule a meeting with myself and your architect, attorney, or contractor, please feel free to contact me. Additional services are available such as on construction monitoring, plan review, ownership representation and verification of completed work prior to owner acceptance.

John Battista
Certified Access Specialist (CASp) #592
Texas Registered Accessibility Specialist #1434
ICC Accessibility / Plan Examiner Inspector #5057311-21
ACAI ADA Compliance Inspector #6097
CALBO Access Committee Member 2016-2020

Sincerely,

John Battista, CASp #592

*Table of Contents*

**Findings** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

    **Accessible Parking Stall** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

    **Exterior Accessible Route** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    **Outdoor Dining Area** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **32**

    **Front Entrance** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **39**

    **Business Interior** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **45**

    **Women's Restroom** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **56**

    **Men's Restroom** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **90**

**DOJ ADA Tax Incentives for Businesses** . . . . . . . . . . . . . . . . . . . . . . . . . . **129**

**Common Questions: Readily Achievable Barrier Removal** . . . . . . . . . . . . . . . . **130**

**Estimated Time-Line for Barrier Removal** . . . . . . . . . . . . . . . . . . . . . . . . . **138**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Accessible Parking Stall

## Finding: 1

The access aisle is partially obstructed by the carpet from the outdoor dining area.

Van Accessible parking stalls' access aisle must be a minimum of 8 feet wide, measured from centerline to centerline and a minimum 18 feet long. Alternatively, the stall can be 12 feet wide and the access aisle may be 5 feet wide (either option is a total of 17 feet).

Where parking spaces or access aisles are not adjacent to another parking space or access aisle, measurements shall be permitted to include the full width of the line defining the parking space or access aisle.

*2019 CBC 11B (CA) Section 11B-502.2*
*Car and van parking spaces shall be 216 inches (5486 mm) long minimum. Car parking spaces shall be 108 inches (2743 mm) wide minimum and van parking spaces shall be 144 inches (3658 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with Section 11B-502.3.*

*2019 CBC 11B (CA) Section 11B-502.2 Exception:*
*Van parking spaces shall be permitted to be 108 inches (2743 mm) wide minimum where the access aisle is 96 inches (2438 mm) wide minimum.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-502.2, 11B-502.2 Exception:** | **The access aisle is partially obstructed** |

## Recommendation:
Remove the carpet and maintain the access aisle clear.

## Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Finding #1 Continued





LOADING AND UNLOADING
ACCESS AISLE BORDER
PAINTED BLUE

STRIPES AT 36" MAXIMUM
ON CENTER PAINTED
A COLOR CONTRASTING
WITH THE PARKING
SURFACE, PREFERABLY
BLUE OR WHITE

TYPICAL PAVEMENT
SYMBOL PER
SECTION 1129B.4

DIMENSION TO
CENTERLINE
OF STRIPE

9'-0" MIN

18'-0" MIN

NO PARKING

WITHIN THE LOADING
& UNLOADING ACCESS
AISLE PAINT THE WORDS
"NO PARKING" IN 12" HIGH
MINIMUM WHITE LETTERS

8'-0" MINIMUM AT VAN
ACCESSIBLE PARKING STALL

**Finding #1 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Accessible Parking Stall

## Finding: 2

The hatch lines at the access aisle are not a maximum 36 inches on center.

The access aisle must be marked with hatched lines a maximum of 36 inches on center in a color contrasting with that of the aisle surface, preferably blue or white.

*2019 CBC 11B (CA) Section 11B-502.3.3*
*Access aisles shall be marked with a blue painted borderline around their perimeter. The area within the blue borderlines shall be marked with hatched lines a maximum of 36 inches (914 mm) on center in a color contrasting with that of the aisle surface, preferably blue or white. The words "NO PARKING" shall be painted on the surface within each access aisle in white letters a minimum of 12 inches (305 mm) in height and located to be visible from the adjacent vehicular way. Access aisle markings may extend beyond the minimum required length.*

## Citation:

**2019 CBC 11B (CA) Section: 11B-502.3.3**

## As Built:

The hatch lines were
measured at 37" to 38"
on center

## Recommendation:
Stripe the hatch lines so they are a maximum of 36" on center as shown above.

## Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #2 Additional Finding Photos**










*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Exterior Accessible Route

### Finding: 3

The entrance from the public sidewalk at the steps is not accessible and is missing signage. An identification sign identifying that this entrance is not accessible and directional signage pointing to the accessible entrance is required.

When a directional sign is required, it should be located to minimize backtracking. In some cases, this could mean locating a sign at the beginning of a route, not just at the inaccessible entrances to a building.

*2019 CBC 11B (CA) Section 11B-216.6*
*In existing buildings and facilities where not all entrances comply with Section 11B-404, entrances complying with Section 11B-404 shall be identified by the International Symbol of Accessibility complying with Section 11B-703.7.2.1. Directional signs complying with Section 11B-703.5 that indicate the location of the nearest entrance complying with Section 11B-404 shall be provided at entrances that do not comply with Section 11B-404. Directional signs complying with Section 11B-703.5, including the International Symbol of Accessibility complying with Section 11B-703.7.2.1, indicating the accessible route to the nearest accessible entrance shall be provided at junctions when the accessible route diverges from the regular circulation path.*

*2010 ADAS Section 216.6*
*Where not all entrances comply with 404, entrances complying with 404 shall be identified by the International Symbol of Accessibility complying with 703.7.2.1. Directional signs complying with 703.5 that indicate the location of the nearest entrance complying with 404 shall be provided at entrances that do not comply with 404.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-216.6**

**2010 ADAS Section: 216.6**

### As Built:

**The require sign has not been provided.**

### Recommendation:
Provide the sign shown above at the stairs pointing to the accessible route on the right.

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #3 Continued**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Exterior Accessible Route

### Finding: 4

The stairway does not have handrails.

Stairways must have handrails on both sides.

Handrails and their extensions must be between 34 inches and 38 inches above the stair nosing or ground.

Top handrails shall extend 12 inches minimum beyond the top nosing and be parallel with the floor or ground.

Bottom landing handrail must extend a min. of 12 inches plus the tread width, beyond the bottom nosing.

One handrail shall be in the direction of the run of the stair and perpendicular to the stair nosing.

Handrails projecting from walls shall have a space of 1-1/2 inches  minimum between the wall and the handrail.

*2019 CBC 11B (CA) Section 11B-505.2*
*Handrails shall be provided on both sides of stairs and ramps.*

### Citation:

2019 CBC 11B (CA) Section: 11B-505.2

### As Built:

The stairway does not have handrails.

### Recommendation:

Provide compliant handrails on both sides of the stairs as shown above.

### Barrier Priority:

1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #4 Continued**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #4 Additional Finding Photos**

 

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Exterior Accessible Route

## Finding: 5

The stair treads are missing a contrasting stripe on their nosings.

Exterior stairs shall have the upper approach and all treads marked by a stripe providing clear visual contrast.

The stripe shall be a minimum of 2 inches wide to a maximum of 4 inches wide placed parallel to, and not more than 1 inch from, the nose of the step or upper approach. The stripe shall extend the full width of the step or upper approach and shall be of material that is at least as slip resistant as the other treads of the stair. A painted stripe shall be acceptable. Grooves shall not be used to satisfy this requirement.

*2019 CBC 11B (CA) Section 11B-504.4.1*
*Interior stairs shall have the upper approach and lower tread marked by a stripe providing clear visual contrast. Exterior stairs shall have the upper approach and all treads marked by a stripe providing clear visual contrast. The stripe shall be a minimum of 2 inches (51 mm) wide to a maximum of 4 inches (102 mm) wide placed parallel to, and not more than 1 inch (25 mm) from, the nose of the step or upper approach. The stripe shall extend the full width of the step or upper approach and shall be of material that is at least as slip resistant as the other treads of the stair. A painted stripe shall be acceptable. Grooves shall not be used to satisfy this requirement.*

## Citation:

**2019 CBC 11B (CA) Section: 11B-504.4.1**

## As Built:

**The required contrasting stripes have not been provided.**

## Recommendation:
Provide the required contrasting stripes as shown above.

## Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Finding #5 Continued




EXTERIOR STAIRS
ALL TREADS ARE
TO HAVE WARNING
STRIPES PER

2" MIN TO
4" MAX

1" MAX

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Exterior Accessible Route

### Finding: 6

The accessible path of travel (walkway) between business entrances has cross slopes greater than 2%.

Surface cross slopes shall not exceed one unit vertical in 48 units horizontal (2-percent slope).  When the slope in the direction of travel of any walk exceeds 1 unit vertical in 20 units horizontal (5-percent slope), it must be constructed as a ramp.

*2019 CBC 11B (CA) Section 11B-403.3*
*The running slope of walking surfaces shall not be steeper than 1:20. The cross slope of walking surfaces shall not be steeper than 1:48.*

*2010 ADAS Section 403.3*
*The running slope of walking surfaces shall not be steeper than 1:20.  The cross slope of walking surfaces shall not be steeper than 1:48.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-403.3** | **Cross slopes were measured up to 3.9%** |
| **2010 ADAS Section: 403.3** | |

### Recommendation:
Rework the concrete walkway to provide cross slopes no greater than 2%

### Barrier Priority:
4 (Low): Should be completed as soon as possible due to being a technical violation, but may not result in providing greater access to persons with disabilities. (Includes; Findings that are technically violations but provide a moderate to low increase in accessibility compared to the financial impact on the entity)

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #6 Continued**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #6 Additional Finding Photos**










*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #6 Additional Finding Photos**







*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Exterior Accessible Route

### Finding: 7

The concrete expansion joints in the walkway are spaced greater than 1/2 inch.

**Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch diameter. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel.**

*2019 CBC 11B (CA) Section 11B-302.3*
*Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch (12.7 mm) diameter except as allowed in Sections 11B-407.4.3, 11 B-409.4.3, 11B-410.4, 11B-810.5.3 and 11B-810.10. Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel.*

*2010 ADAS Section 302.3*
*Openings in floor or ground surfaces shall not allow passage of a sphere more than 1/2 inch (13 mm) diameter except as allowed in 407.4.3, 409.4.3, 410.4, 810.5.3 and 810.10.  Elongated openings shall be placed so that the long dimension is perpendicular to the dominant direction of travel.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-302.3** | **The concrete expansion joints measure up to 1"** |
| **2010 ADAS Section: 302.3** | |

### Recommendation:
**Fill the expansion joints with an approved caulking.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #7 Continued**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #7 Additional Finding Photos**











*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Exterior Accessible Route

### Finding: 8

**The wall mounted Fire Extinguisher cabinets projects more than 4 inches into the circulation path.**

**Wall-mounted objects that have leading edges between 27 inches and 80 inches from the floor must not project more than 4 inches into the circulation path. Protruding objects that extend to the floor or within 27 inches of the floor are cane detectable and are therefore not hazardous. Where it is necessary or desirable to have objects protrude from the wall, a manner of cane detection must be provided.**

*2019 CBC 11B (CA) Section 11B-307.2*
*Objects with leading edges more than 27 inches (686 mm) and not more than 80 inches (2032 mm) above the finish floor or ground shall protrude 4 inches (102 mm) maximum horizontally into the circulation path.*

*2010 ADAS Section 307.2*
*Objects with leading edges more than 27 inches (685 mm) and not more than 80 inches (2030 mm) above the finish floor or ground shall protrude 4 inches (100 mm) maximum horizontally into the circulation path.*

**Citation:**

**2019 CBC 11B (CA) Section: 11B-307.2**

**2010 ADAS Section: 307.2**

**As Built:**

**The wall mounted Fire Extinguisher cabinets project 5-3/4" from the wall.**

### Recommendation:
**Either recess the cabinets or provide cane detection under the cabinets.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #8 Continued**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #8 Additional Finding Photos**

















*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #8 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Exterior Accessible Route

## Finding: 9

There is an abrupt change in level exceeding 4 inches next to the walk adjacent to the accessible parking stall.

Abrupt changes in level, except between a walk or sidewalk and an adjacent street or driveway, exceeding 4 inches in a vertical dimension, such as at planters or fountains located in or adjacent to walks, sidewalks or other pedestrian ways, shall be identified by curbs or other elements such as guards or raised planters, projecting at least 6 inches in height above the walk or sidewalk surface to warn the blind of a potential drop off.

*2019 CBC 11B (CA) Section 11B-303.5*
*Abrupt changes in level exceeding 4 inches (102 mm) in a vertical dimension between walks, sidewalks or other pedestrian ways and adjacent surfaces or features shall be identified by warning curbs at least 6 inches (152 mm) in height above the walk or sidewalk surface.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-303.5** | **The slope next to the walk measures 32.4%** |

## Recommendation:
Provide a 6" curb at the side of the accessible route as shown above.

## Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #9 Additional Finding Photos**









*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Outdoor Dining Area

### Finding: 10

There is no accessible route to the outdoor dining area.

At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.

*2019 CBC 11B (CA) Section 11B-206.2.2*
*At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.*

*2010 ADAS Section 206.2.2*
*At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.*

**Citation:**

2019 CBC 11B (CA) Section: 11B-206.2.2

2010 ADAS Section: 206.2.2

**As Built:**

There is no accessible route to the outdoor dining area.

### Recommendation:
Provide a compliant accessible route to the outdoor dining area.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #10 Additional Finding Photos**

 



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Outdoor Dining Area

### Finding: 11

**There are no accessible tables provided in the outdoor dining area.**

**At least 5% of each type in each functional area of dining surfaces must be accessible and must be dispersed throughout the space or facility containing dining surfaces. An accessible table must be on an accessible route (36 inches minimum) and have knee and toe spaces at least 27 inches high, 30 inches wide and 19 inches deep. The tops of tables and counters shall be 28 inches to 34 inches from the floor or ground.**

*2019 CBC 11B (CA) Section 11B-226.1*
*Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with Section 11B-902. In addition, where work surfaces are provided for use by other than employees, at least 5 percent shall comply with Section 11B-902.*

| **Citation:** | **As Built:** |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-226.1** | **There are no accessible tables provided** |

### Recommendation:
**Provide the required number of accessible tables as described above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #11 Additional Finding Photos**

 

 

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Outdoor Dining Area

## Finding: 12

**The Canopy and hanging lights at the outdoor dining area extend down too close to the route of travel.**

**Any obstruction that overhangs a route of travel must be a minimum of 80 inches above the walking surface as measured to the bottom of the obstruction.**

*2019 CBC 11B (CA) Section 11B-307.4*
*Vertical clearance shall be 80 inches (2032 mm) high minimum. Guardrails or other barriers shall be provided where the vertical clearance is less than 80 inches (2032 mm) high. The leading edge of such guardrail or barrier shall be located 27 inches (686 mm) maximum above the finish floor or ground.*

*2010 ADAS Section 307.3*
*Free-standing objects mounted on posts or pylons shall overhang circulation paths 12 inches (305 mm) maximum when located 27 inches (685 mm) minimum and 80 inches (2030 mm) maximum above the finish floor or ground.  Where a sign or other obstruction is mounted between posts or pylons and the clear distance between the posts or pylons is greater than 12 inches (305 mm), the lowest edge of such sign or obstruction shall be 27 inches (685 mm) maximum or 80 inches (2030 mm) minimum above the finish floor or ground.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-307.4** | **The clearance is less than 65"** |
| **2010 ADAS Section: 307.3** | |

## Recommendation:
**Raise the canopy and lights to provide the required 80" head clearance.**

## Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #12 Continued**





Any Projection

80" MIN.

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #12 Additional Finding Photos**











## Front Entrance

## Finding: 13

**The floor mats at the front entrance door are not secured in place.**

**If carpet or carpet tile is used on a ground or floor surface, then it shall be securely attached; have a firm cushion, pad or backing or no cushion or pad; and have a level loop, textured loop, level-cut pile or level-cut/uncut pile texture. The maximum pile height shall be 1/2 inch. Exposed edges of carpet shall be fastened to floor surfaces and have trim along the entire length of the exposed edge. Recessed doormats shall be adequately anchored to prevent interference with wheelchair traffic.**

*2019 CBC 11B (CA) Section 11B-302.2*
*Carpet or carpet tile shall be securely attached and shall have a firm cushion, pad, or backing or no cushion or pad. Carpet or carpet tile shall have a level loop, textured loop, level cut pile, level cut/uncut pile texture. Pile height shall be 1/2 inch (12.7 mm) maximum. Exposed edges of carpet shall be fastened to floor surfaces and shall have trim on the entire length of the exposed edge. Carpet edge trim shall comply with Sect ion 11 B-303.*

*2010 ADAS Section 302.2*
*Carpet or carpet tile shall be securely attached and shall have a firm cushion, pad, or backing or no cushion or pad.  Carpet or carpet tile shall have a level loop, textured loop, level cut pile, or level cut/uncut pile texture.  Pile height shall be 1/2 inch (13 mm) maximum.  Exposed edges of carpet shall be fastened to floor surfaces and shall have trim on the entire length of the exposed edge.  Carpet edge trim shall comply with 303.*

## Citation:

**2019 CBC 11B (CA) Section: 11B-302.2**

**2010 ADAS Section: 302.2**

## As Built:

**The floor mats at the front entrance door are not secured**

## Recommendation:
**Either remove or secure the floor mats.**

## Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Finding #13 Continued





Inadequately anchored door mats interfere with wheelchair traffic

Door mat

Firm flush mounted mats are preferable

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #13 Additional Finding Photos**

 

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Front Entrance

### Finding: 14

The front entrance threshold is greater than 1/2 inch high.

The threshold at a doorway shall be no higher than 1/2 inch. Changes in level between 1/4 inch and 1/2 inch must be beveled at 1:2 or less. 1/4 inch is the maximum vertical rise.

*2019 CBC 11B (CA) Section 11B-404.2.5*
*Thresholds, if provided at doorways, shall be 1/2 inch (12.7 mm) high maximum. Raised thresholds and changes in level at doorways shall comply with Sections 11B-302 and 11B-303.*

*2010 ADAS Section 404.2.5*
*Thresholds, if provided at doorways, shall be 1/2 inch (13 mm) high maximum. Raised thresholds and changes in level at doorways shall comply with 302 and 303.*

**Citation:**

2019 CBC 11B (CA) Section: 11B-404.2.5

2010 ADAS Section: 404.2.5

**As Built:**

The threshold was measured at 1" high.

### Recommendation:
Provide a compliant threshold as shown above.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #14 Additional Finding Photos**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Front Entrance

### Finding: 15

**The door exceeds the maximum allowable opening force.**

**Doors shall have a maximum opening force of 5 pounds.**

**These forces do not apply to the force required to retract latch bolts or disengage other devices that hold the door or gate in a closed position. Door closers and gate closers shall be adjusted so that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.**

*2019 CBC 11B (CA) Section 11B-404.2.9*
*These forces do not apply to the force required to retract latch bolts or disengage other devices that hold the door or gate in a closed position.*

**Citation:**

**2019 CBC 11B (CA) Section: 11B-404.2.9**

**As Built:**

**The door opening pressure was measured at 12 lbs.**

### Recommendation:
**Adjust the door opening pressure.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Business Interior

### Finding: 16

**A tactile EXIT sign is missing at the front exit door.**

**Wall signs identifying exits shall have characters raised 1/32 inch minimum and shall be uppercase characters a minimum of 5/8 inch and a maximum of 2 inches high. Braille shall be placed directly below the tactile characters; flush left or centered. Signs shall be located a minimum of 48 inches above floor, measured from the baseline of the lowest line of Braille and 60 inches maximum above the finish floor or ground surface, measured from the baseline of the highest line of raised characters.**

**Where a tactile sign is provided at a door, the sign shall be located at the latch side. Where a tactile sign is provided at double door the sign shall be located to the right of the right hand door. Where there is no wall space at the latch side of a single door or at the right side of double doors, signs shall be located on the nearest adjacent wall.**

*2019 CBC 11B (CA) Section 11B-216.4.1*
*Signs required by Chapter 10, Section 1013.4 at doors to exit passageways, exit discharge, and exit stairways shall comply with Sections 11B- 103.1, 11B-703.2, 11B-703.3 and 11B-703.5.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-216.4.1** | **A tactile EXIT sign is missing at the front exit door.** |

### Recommendation:
**Provide the required tactile Exit sign as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #16 Continued**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Business Interior

### Finding: 17

The accessible portion of the countertop does not extend the same depth as the sales or service counter top.

Transaction counters shall be 34 inches high maximum and  36 inches wide minimum. The accessible portion of the counter must extend the same depth as the sales or service counter top.

*2019 CBC 11B (CA) Section 11B-904.4*
*Sales counters and service counters shall comply with Section 11B-904.4.1 or 11B-904.4.2. The accessible portion of the counter top shall extend the same depth as the sales or service counter top.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-904.4** | **The lowered counter does not extend the same depth as the higher counter.** |

### Recommendation:
Provide a compliant lowered section of counter as described above.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #17 Additional Finding Photos**















*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Business Interior

### Finding: 18

The knee clearance only extends under the Sushi bar counter less than 15''.  The sushi bar counter does not have compliant knee clearance,

At least 5 percent of the seating spaces and standing spaces shall provide a clear floor space positioned for a forward approach and knee and toe clearance. The tops of dining surfaces  shall be 28 inches minimum and 34 inches maximum above the finish floor or ground.

*2019 CBC 11B (CA) Section 11B-306.3.3 Exceptions: 2*
*At dining and work surfaces required to be accessible by Section 11B-226.1, knee clearance shall extend 19 inches (483 mm) deep minimum at 27 inches (686 mm) above the finish floor or ground.*

**Citation:**

2019 CBC 11B (CA) Section: 11B-306.3.3
Exceptions: 2

**As Built:**

The knee clearance
only extends under the
counter less than 15''

### Recommendation:
Extend a 60'' portion of the counter top out to provide the required 19'' deep knee clearance as shown in the figure above.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #18 Additional Finding Photos**

 

## Business Interior

## Finding: 19

There are no accessible tables provided at the indoor dining area.

At least 5% of each type in each functional area of dining surfaces must be accessible and must be dispersed throughout the space or facility containing dining surfaces. An accessible table must be on an accessible route (36 inches minimum) and have knee and toe spaces at least 27 inches high, 30 inches wide and 19 inches deep. The tops of tables and counters shall be 28 inches to 34 inches from the floor or ground.

*2019 CBC 11B (CA) Section 11B-226.1*
*Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with Section 11B-902. In addition, where work surfaces are provided for use by other than employees, at least 5 percent shall comply with Section 11B-902.*

**Citation:**                                    **As Built:**

2019 CBC 11B (CA) Section: 11B-226.1            There are no accessible tables provided.

## Recommendation:
Provide the required number of accessible tables as shown above.

## Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #19 Additional Finding Photos**










*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Business Interior

### Finding: 20

**Provide directional signage to the nearest accessible restrooms.**

**Signs that identify, direct to or give information about accessible elements and features of a building or site, shall have a non-glare finish, contrast with their background, be selected from fonts where the width of the uppercase letter "O" is 55 percent minimum and 110 percent maximum of the height of the uppercase letter "I".  Characters shall be uppercase or lowercase or a combination of both, conventional in form and shall not be italic, oblique, script, highly decorative, or of other unusual forms  and be sized according to the viewing distance.**

*2010 ADAS Section 216.8*
*Where existing toilet rooms or bathing rooms do not comply with 603, directional signs indicating the location of the nearest toilet room or bathing room complying with 603 within the facility shall be provided.  Signs shall comply with 703.5 and shall include the International Symbol of Accessibility complying with 703.7.2.1.  Where existing toilet rooms or bathing rooms do not comply with 603, the toilet rooms or bathing rooms complying with 603 shall be identified by the International Symbol of Accessibility complying with 703.7.2.1.  Where clustered single user toilet rooms or bathing facilities are permitted to use exceptions to 213.2, toilet rooms or bathing facilities complying with 603 shall be identified by the International Symbol of Accessibility complying with 703.7.2.1 unless all toilet rooms and bathing facilities comply with 603.*

| Citation: | As Built: |
|---|---|
| **2010 ADAS Section: 216.8** | **The required signage has not been provided.** |

### Recommendation:
**Replace the existing signs with the accessible restrooms sign shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #20 Continued**





**Finding #20 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 21

**A compliant room identification sign is missing on the strike side of the door.**

**Wall signs identifying permanent rooms and spaces of a building shall have  be horizontal format and the characters raised 1/32 inch minimum and shall be sans serif uppercase characters a minimum of 5/8 inch and a maximum of 2 inches high. Contracted Grade 2 Braille shall be in a horizontal format and shall be placed a minimum of 3/8 inch and a maximum of 1/2 inch directly below the tactile characters; flush left or centered. Signs with raised characters or Braille shall be located a minimum of 48 inches above the finish floor or ground surface, measured from the baseline of the lowest line of Braille and 60 inches maximum above the finish floor or ground surface, measured from the baseline of the highest line of raised characters.**

*2019 CBC 11B (CA) Section 11B-216.2*
*Interior and exterior signs identifying permanent rooms and spaces shall comply with Sections 11B-703.1, 11B-703.2, 11B-703.3 and 11B-703.5. Where pictograms are provided as designations of permanent rooms and spaces, the pictograms shall comply with Section 11B- 103.6 and shall have text descriptors complying with Sections 11B-703.2 and 11B-703.5.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-216.2**

### As Built:

**The required sign has not been provided.**

### Recommendation:
**Provide the required signage as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #21 Continued**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 22

The geometric symbol for the women's room is not within the allowable height range above the finish floor.

Doorways leading to toilet rooms and bathing rooms shall be identified by a geometric symbol. The symbol shall be mounted at 58 inches minimum and 60 inches maximum above the finish floor or ground surface measured from the centerline of the symbol. Where a door is provided the symbol shall be mounted within 1 inch of the vertical centerline of the door.

*2019 CBC 11B (CA) Section 11B-703.7.2.6*
*Geometric symbols at entrances to toilet and bathing rooms shall be mounted at 58 inches (1473 mm) minimum and 60 inches (1524 mm) maximum above the finish floor or ground surface measured from the centerline of the symbol. Where a door is provided the symbol shall be mounted within 1 inch (25 mm) of the vertical centerline of the door.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-703.7.2.6**

### As Built:

**The height of the sign was measured at 62"**

### Recommendation:
Lower the sign to a compliant height.

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #22 Additional Finding Photos**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 23

**The path of travel to the accessible toilet compartment is too narrow.**

**There must be a minimum 44 inch wide path of travel to the toilet compartment.**

*2019 CBC 11B (CA) Section 11B-403.5.1*
*Except as provided in Sections 11B-403.5.2 and 11B-403.5.3, the clear width of walking surfaces shall be 36 inches (914 mm) minimum.*

**Citation:**

**2019 CBC 11B (CA) Section: 11B-403.5.1**

**As Built:**

**There is only 38-1/2" of clearance provided.**

### Recommendation:
**Modify the counter top to provide the required clearance as shown above.**

### Barrier Priority:
**2 (Important): Should be completed as soon as possible. (Includes; Findings that would remove barriers to the greatest number of people to your goods and services)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #23 Additional Finding Photos**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 24

The maneuvering clearance on the pull side of the door extends less than 18 inches beyond the latch side of the door.

Maneuvering space for interior doors on the pull side with a front approach must be flat (2% max. slope in any direction) for a minimum distance of 60 inches in the direction of travel. The width of the maneuvering space must be as wide as the door plus an additional 18 inches on the latch side. This latch side clearance must also be flat (2% max. slope in any direction) and clear of obstructions.

*2019 CBC 11B (CA) Section 11B-404.2.4.1*
*Swinging doors and gates shall have maneuvering clearances complying with Table 11B-404.2.4.1.*

*2010 ADAS Section 404.2.4.1*
*Swinging doors and gates shall have maneuvering clearances complying with Table 404.2.4.1.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-404.2.4.1**

**2010 ADAS Section: 404.2.4.1**

### As Built:

There is only 14'' of pull clearance provided.

### Recommendation:
Cut back the counter top or reverse the swing of the door.

### Barrier Priority:
**3 (Moderate): Should be completed as soon as possible, but there may be other items that will provide greater access to persons with disabilities. (Includes; Findings that have a high financial impact on the entity in relationship to the degree of access provided)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #24 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 25

The top rim of the lavatory is too high.

**All lavatories that are designated to be accessible shall be a minimum 17 inches in horizontal depth and mounted with the rim or counter edge no higher than 34 inches above the finished floor.**

*2019 CBC 11B (CA) Section 11B-606.3*
*Lavatories and sinks shall be installed with the front of the higher of the rim or counter surface 34 inches (864 mm) maximum above the finish floor or ground.*

*2010 ADAS Section 606.3*
*Lavatories and sinks shall be installed with the front of the higher of the rim or counter surface 34 inches (865 mm) maximum above the finish floor or ground.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-606.3** | **The lavatory was measured at 35"** |
| **2010 ADAS Section: 606.3** | |

### Recommendation:
Lower the lavatory to a compliant height as shown above.

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #25 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 26

The paper towel dispenser's operation mechanism is too high off the floor.

Dispensers in restrooms must have operable parts a maximum of 40 inches above the floor.

*2019 CBC 11B (CA) Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches (1016 mm) maximum above the finish floor.*

### Citation:

2019 CBC 11B (CA) Section: 11B-603.5

### As Built:

The paper towel dispenser was measured at 54"

### Recommendation:
Lower the paper towel dispenser to a compliant height as shown above.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)




**Finding #26 Additional Finding Photos**

 

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 27

The "Gargle Dispenser's" operation mechanism is too high off the floor.

Dispensers in restrooms must have operable parts a maximum of 40 inches above the floor.

*2019 CBC 11B (CA) Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches (1016 mm) maximum above the finish floor.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-603.5**

### As Built:

**The dispensers operable parts were measured at 52"**

### Recommendation:
Lower the Gargle Dispenser to a compliant height as shown above.

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**





**Finding #27 Additional Finding Photos**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 28

**The mirror is mounted too high.**

**Mirrors must have the bottom edge of the reflecting surface a maximum of 40 inches above the floor if above a sink or counter. Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches maximum above the finish floor or ground.**

*2019 CBC 11B (CA) Section 11B-603.3*
*Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1016 mm) maximum above the finish floor or ground. Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches (889 mm) maximum above the finish floor or ground.*

*2010 ADAS Section 603.3*
*Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1015 mm) maximum above the finish floor or ground. Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches (890 mm) maximum above the finish floor or ground.*

**Citation:**

**2019 CBC 11B (CA) Section: 11B-603.3**

**2010 ADAS Section: 603.3**

**As Built:**

**The mirror was measured at 40-3/4" high**

### Recommendation:
**Lower the mirror**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

**Finding #28 Continued**





If mounted over a counter or lavatory 40 inches max. to the bottom of the reflecting surface, 35 inches max if not mounted over a counter or lavatory

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #28 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 29

**The toilet paper dispenser is located above the grab bar.**

**Toilet tissue dispensers shall be located on the wall or partition closest to the water closet, 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser, mounted below the grab bar, with the outlet of the dispenser 19 inches minimum above the finish floor. There shall be a clearance of 1 1/2 inches minimum below the grab bar. Dispensers shall not be of a type that controls delivery or that does not allow continuous paper flow.**

*2019 CBC 11B (CA) Section 11B-604.7.1*
*Toilet paper dispensers shall comply with Section 11B-309.4 and shall be 7 inches (178 mm) minimum and 9 inches (229 mm) maximum in front of the water closet measured to the centerline of the dispenser. The outlet of the dispenser shall be below the grab bar, 19 inches (483 mm) minimum above the finish floor and shall not be located behind grab bars. Dispensers shall not be of a type that controls delivery or that does not allow continuous paper flow.*

**Citation:**                                          **As Built:**

**2019 CBC 11B (CA) Section: 11B-604.7.1**              **The toilet paper dispenser is located above the grab bar.**

### Recommendation:
**Relocate the toilet paper dispenser to a compliant dimension as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




**Finding #29 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 30

**The side grab bar does not extend far enough from the rear wall.**

**The side grab bar must extend at least 54 inches minimum beyond the rear wall and start a maximum of 12 inches from the rear wall. The front end must be 24 inches minimum in front of the toilet. A 42 inch grab bar installed the maximum distance from the rear wall (12 inches) will leave the leading end 54 inches from the rear wall and 24 inches in front of the toilet. Grab bars shall be installed in a horizontal position, 33 inches minimum and 36 inches maximum above the finish floor measured to the top of the gripping surface.**

*2019 CBC 11B (CA) Section 11B-604.5.1*
*The side wall grab bar shall be 42 inches (1067 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1372 mm) minimum from the rear wall with the front end positioned 24 inches (610 mm) minimum in front of the water closet.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-604.5.1**

### As Built:

**The side grab bar only extends 49'' from the rear wall.**

### Recommendation:
**Relocate the side grab bar to a compliant dimension as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




**Finding #30 Additional Finding Photos**



## Women's Restroom

### Finding: 31

The paper towel dispenser is mounted too close to the top of the grab bar, minimizing the gripping surface.

Adjacent elements shall be positioned to provide unobstructed use of grab bars. The space between the grab bar and projecting objects below and at the ends shall be 1-1/2 inches minimum. The space between the grab bar and projecting objects above shall be 12 inches minimum.

*2019 CBC 11B (CA) Section 11B-609.3*
*The space between the wall and the grab bar shall be 1 1/2 inches (38 mm). The space between the grab bar and projecting objects below and at the ends shall be 1 1/2 inches (38 mm) minimum. The space between the grab bar and projecting objects above shall be 12 inches (305 mm) minimum.*

*2010 ADAS Section 609.3*
*The space between the wall and the grab bar shall be 1 1/2 inches (38 mm). The space between the grab bar and projecting objects below and at the ends shall be 1 1/2 inches (38 mm) minimum. The space between the grab bar and projecting objects above shall be 12 inches (305 mm) minimum.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-609.3**

**2010 ADAS Section: 609.3**

### As Built:

**The paper towel dispenser is mounted over the side grab bar.**

### Recommendation:
**Relocate the paper towel dispenser.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #31 Continued**





## Women's Restroom

### Finding: 32

**The toilet is not located within the range allowed from the side wall or partition.**

**The centerline of the toilet must be 17 to 18 inches from the side wall.**

*2019 CBC 11B (CA) Section 11B-604.2*
*The water closet shall be positioned with a wall or partition to the rear and to one side. The centerline of the water closet shall be 17 inches (432 mm) minimum to 18 inches (457 mm) maximum from the side wall or partition, except that the water closet shall be 17 inches (432 mm) minimum and 19 inches (483 mm) maximum from the side wall or partition in the ambulatory accessible toilet compartment specified in Section 11B-604.8.2. Water closets shall be arranged for a left-hand or right-hand approach.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-604.2**

### As Built:

**The toilet was measured at 19" from the wall to the center of the fixture.**

### Recommendation:
**Shift the toilet over to a compliant dimension as shown above.**

### Barrier Priority:
**4 (Low): Should be completed as soon as possible due to being a technical violation, but may not result in providing greater access to persons with disabilities. (Includes; Findings that are technically violations but provide a moderate to low increase in accessibility compared to the financial impact on the entity)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #32 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 33

**The toilet seat cover dispenser is not on an accessible route.**

**Toilet seat covers must be on an accessible route. An accessible route of travel is 36 inches wide minimum and provides a 30 inch by 48 inch clear floor space that allows a side or forward approach. Dispensers must have all operable parts a maximum of 40 inches above the floor.**

*2019 CBC 11B (CA) Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches (1016 mm) maximum above the finish floor.*

**Citation:**

**2019 CBC 11B (CA) Section: 11B-603.5**

**As Built:**

**The seat cover dispenser is mounted over the rear grab bar and is too high.**

### Recommendation:
**Relocate the seat cover dispenser to a compliant location and height as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #33 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 34

**The clear floor space around the toilet is obstructed by the trash can**

**No fixtures are allowed in the clear floor space required for the toilet.**

**The required clearance around the water closet shall be permitted to overlap the water closet, associated grab bars, dispensers, sanitary napkin disposal units, coat hooks, shelves, accessible routes, clear floor space and clearances required at other fixtures, and the turning space. No other fixtures or obstructions shall be located within the required water closet clearance.**

*2019 CBC 11B (CA) Section 11B-604.3.1*
*Clearance around a water closet shall be 60 inches (1524 mm) minimum measured perpendicular from the side wall and 56 inches (1422 mm) minimum measured perpendicular from the rear wall. A minimum 60 inches (1524 mm) wide and 48 inches (1219 mm) deep maneuvering space shall be provided in front of the water closet.*

*2010 ADAS Section 604.3.2*
*The required clearance around the water closet shall be permitted to overlap the water closet, associated grab bars, dispensers, sanitary napkin disposal units, coat hooks, shelves, accessible routes, clear floor space and clearances required at other fixtures, and the turning space.  No other fixtures or obstructions shall be located within the required water closet clearance.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-604.3.1**

**2010 ADAS Section: 604.3.2**

### As Built:

**The trash can is located in the toilets required clear area.**

### Recommendation:
**Relocate the trash can.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

**Finding #34 Continued**





**Finding #34 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 35

The compartment door locking hardware exceeds maximum height requirements.

**Handles, pulls, latches, locks, and other operable parts on doors and gates shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching or twisting of the wrist to operate. Operable parts of such hardware shall be 34 inches minimum and 44 inches maximum above the finish floor or ground. Where sliding doors are in the fully open position, operating hardware shall be exposed and usable from both sides.**

*2019 CBC 11B (CA) Section 11B-404.2.7*
*Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with Section 11B-309.4. Operable parts of such hardware shall be 34 inches (864 mm) minimum and 44 inches (1118 mm) maximum above the finish floor or ground. Where sliding doors are in the fully open position, operating hardware shall be exposed and usable from both sides.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-404.2.7**

### As Built:

**The door lock was measured at 51-1/2":**

### Recommendation:
Lower the door lock to a compliant height.

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #35 Additional Finding Photos**

   

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Women's Restroom

### Finding: 36

**The coat hook is installed greater than 48 inches above the finished floor.**

**Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum above the finished floor.**

*2019 CBC 11B (CA) Section 11B-308.2.1*
*Where a forward reach is unobstructed, the high forward reach shall be 48 inches (1219 mm) maximum and the low forward reach shall be 15 inches (381 mm) minimum above the finish floor or ground.*

*2010 ADAS Section 308.2.1*
*Where a forward reach is unobstructed, the high forward reach shall be 48 inches (1220 mm) maximum and the low forward reach shall be 15 inches (380 mm) minimum above the finish floor or ground.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-308.2.1** | **The coat hook was measured at 65"** |
| **2010 ADAS Section: 308.2.1** | |

### Recommendation:
**Provide a lowered coat hook.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




Considered
Unobstructed

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #36 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 37

**The paper towel dispenser's operation mechanism is too high off the floor.**

**Dispensers in restrooms must have operable parts a maximum of 40 inches above the floor.**

*2019 CBC 11B (CA) Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches (1016 mm) maximum above the finish floor.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-603.5** | **The paper towel dispenser was measured at 54"** |

### Recommendation:
**Lower the paper towel dispenser to a compliant height as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #37 Additional Finding Photos**

 

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 38

A compliant room identification sign is missing on the strike side of the door.

**Wall signs identifying permanent rooms and spaces of a building shall have  be horizontal format and the characters raised 1/32 inch minimum and shall be sans serif uppercase characters a minimum of 5/8 inch and a maximum of 2 inches high. Contracted Grade 2 Braille shall be in a horizontal format and shall be placed a minimum of 3/8 inch and a maximum of 1/2 inch directly below the tactile characters; flush left or centered. Signs with raised characters or Braille shall be located a minimum of 48 inches above the finish floor or ground surface, measured from the baseline of the lowest line of Braille and 60 inches maximum above the finish floor or ground surface, measured from the baseline of the highest line of raised characters.**

*2019 CBC 11B (CA) Section 11B-216.2*
*Interior and exterior signs identifying permanent rooms and spaces shall comply with Sections 11B-703.1, 11B-703.2, 11B-703.3 and 11B-703.5. Where pictograms are provided as designations of permanent rooms and spaces, the pictograms shall comply with Section 11B- 103.6 and shall have text descriptors complying with Sections 11B-703.2 and 11B-703.5.*

| **Citation:** | **As Built:** |
| --- | --- |
| 2019 CBC 11B (CA) Section: 11B-216.2 | The required sign has not been provided. |

### Recommendation:
Provide the required signage as shown above.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)

*ADA Compliance Masters, Inc.*
*(818) 470 - 4344*

adacompliancemasters.com
*Powered by  BlueDAG*

*92 of 141*

171

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #38 Continued**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 39

The door operating hardware is not accessible.

Hand-activated door opening hardware, handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, pinching or twisting of the wrist to operate.

*2019 CBC 11B (CA) Section 11B-404.2.7*
*Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with Section 11B-309.4. Operable parts of such hardware shall be 34 inches (864 mm) minimum and 44 inches (1118 mm) maximum above the finish floor or ground. Where sliding doors are in the fully open position, operating hardware shall be exposed and usable from both sides.*

**Citation:**

2019 CBC 11B (CA) Section: 11B-404.2.7

**As Built:**

There is knob type hardware provided.

### Recommendation:
Provide compliant lever type hardware.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #39 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 40

The restroom door locking hardware requires tight grasping, pinching or twisting of the wrist to operate.

Hand-activated hardware, handles, pulls, latches, locks, and other operating devices on accessible elements shall have a shape that is easy to grasp with one hand and does not require tight grasping, pinching or twisting of the wrist to operate.

*2019 CBC 11B (CA) Section 11B-309.4*
*Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds (22.2 N) maximum*

*2010 ADAS Section 309.4*
*Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist.  The force required to activate operable parts shall be 5 pounds (22.2 N) maximum.*

**Citation:**

2019 CBC 11B (CA) Section: 11B-309.4

2010 ADAS Section: 309.4

**As Built:**

There is a twist style lock provided.

### Recommendation:
Replace the door knob with a compliant door level that has a button style lock.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

## Finding: 41

The geometric symbol for the men's room is not within the allowable height range above the finish floor.

Doorways leading to toilet rooms and bathing rooms shall be identified by a geometric symbol. The symbol shall be mounted at 58 inches minimum and 60 inches maximum above the finish floor or ground surface measured from the centerline of the symbol. Where a door is provided the symbol shall be mounted within 1 inch of the vertical centerline of the door.

*2019 CBC 11B (CA) Section 11B-703.7.2.6*
*Geometric symbols at entrances to toilet and bathing rooms shall be mounted at 58 inches (1473 mm) minimum and 60 inches (1524 mm) maximum above the finish floor or ground surface measured from the centerline of the symbol. Where a door is provided the symbol shall be mounted within 1 inch (25 mm) of the vertical centerline of the door.*

**Citation:**

2019 CBC 11B (CA) Section: 11B-703.7.2.6

**As Built:**

The height of the sign was measured at 61-1/2"

## Recommendation:
Lower the sign to a compliant height.

## Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)





*ADA Compliance Masters, Inc.*
*(818) 470 - 4344*

adacompliancemasters.com

*Powered by BlueDAG*

*97 of 141*

176

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #41 Additional Finding Photos**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

## Finding: 42

The maneuvering clearance on the pull side of the door extends less than 18 inches beyond the latch side of the door.

Maneuvering space for interior doors on the pull side with a front approach must be flat (2% max. slope in any direction) for a minimum distance of 60 inches in the direction of travel. The width of the maneuvering space must be as wide as the door plus an additional 18 inches on the latch side. This latch side clearance must also be flat (2% max. slope in any direction) and clear of obstructions.

*2019 CBC 11B (CA) Section 11B-404.2.4.1*
*Swinging doors and gates shall have maneuvering clearances complying with Table 11B-404.2.4.1.*

*2010 ADAS Section 404.2.4.1*
*Swinging doors and gates shall have maneuvering clearances complying with Table 404.2.4.1.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-404.2.4.1**

**2010 ADAS Section: 404.2.4.1**

### As Built:

**There is only 10" of pull clearance provided.**

### Recommendation:
**Remove the urinal partition.**

### Barrier Priority:
**2 (Important): Should be completed as soon as possible. (Includes; Findings that would remove barriers to the greatest number of people to your goods and services)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #42 Additional Finding Photos**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 43

The "Gargle Dispenser's" operation mechanism is too high off the floor.

Dispensers in restrooms must have operable parts a maximum of 40 inches above the floor.

*2019 CBC 11B (CA) Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches (1016 mm) maximum above the finish floor.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-603.5** | **The dispensers operable parts were measured at 55"** |

### Recommendation:
Lower the Gargle Dispenser to a compliant height as shown above.

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #43 Additional Finding Photos**






*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 44

**The mirror is mounted too high.**

**Mirrors must have the bottom edge of the reflecting surface a maximum of 40 inches above the floor if above a sink or counter. Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches maximum above the finish floor or ground.**

*2019 CBC 11B (CA) Section 11B-603.3*
*Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1016 mm) maximum above the finish floor or ground. Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches (889 mm) maximum above the finish floor or ground.*

*2010 ADAS Section 603.3*
*Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1015 mm) maximum above the finish floor or ground.  Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches (890 mm) maximum above the finish floor or ground.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-603.3** | **The mirror was measured at 40-1/2" high** |
| **2010 ADAS Section: 603.3** | |

### Recommendation:
**Lower the mirror**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #44 Continued**





**Mirror**

If mounted over a counter or lavatory 40 inches max. to the bottom of the reflecting surface, 35 inches max if not mounted over a counter or lavatory

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #44 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 45

**The top rim of the lavatory is too high.**

**All lavatories that are designated to be accessible shall be a minimum 17 inches in horizontal depth and mounted with the rim or counter edge no higher than 34 inches above the finished floor.**

*2019 CBC 11B (CA) Section 11B-606.3*
*Lavatories and sinks shall be installed with the front of the higher of the rim or counter surface 34 inches (864 mm) maximum above the finish floor or ground.*

*2010 ADAS Section 606.3*
*Lavatories and sinks shall be installed with the front of the higher of the rim or counter surface 34 inches (865 mm) maximum above the finish floor or ground.*

**Citation:**

**2019 CBC 11B (CA) Section: 11B-606.3**

**2010 ADAS Section: 606.3**

**As Built:**

**The lavatory was measured at 35-1/4"**

### Recommendation:
**Lower the lavatory to a compliant height as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #45 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 46

The water and drain pipes under the lavatory are not adequately insulated.

**Water supply and drain pipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories and sinks.**

*2019 CBC 11B (CA) Section 11B-606.5*
*Water supply and drain pipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories and sinks.*

*2010 ADAS Section 606.5*
*Water supply and drain pipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact.  There shall be no sharp or abrasive surfaces under lavatories and sinks.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-606.5** | **The lines are not completely insulated.** |
| **2010 ADAS Section: 606.5** | |

### Recommendation:
Completely insulate all the drain and water supply lines under the lavatory.

### Barrier Priority:
1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)





ACCESSIBLE LAVATORY

Pipe wrap or equivalent

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 47

The rim of the urinal is above the maximum allowable height.

**Wall-hung urinals must be provided with an elongated rim projecting a minimum of 13 1/2 inches from the wall and a maximum of 17 inches above the floor.**

*2019 CBC 11B (CA) Section 11B-605.2*
*Urinals shall be the stall-type or the wall-hung type with the rim 17 inches (432 mm) maximum above the finish floor or ground. Urinals shall be 13 1/2 inches (343 mm) deep minimum measured from the outer face of the urinal rim to the back of the fixture.*

*2010 ADAS Section 605.2*
*Urinals shall be the stall-type or the wall-hung type with the rim 17 inches (430 mm) maximum above the finish floor or ground.  Urinals shall be 13 1/2  inches (345 mm) deep minimum measured from the outer face of the urinal rim to the back of the fixture.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-605.2** | **The rim of the urinal was measured at 20-3/4"** |
| **2010 ADAS Section: 605.2** | |

### Recommendation:
Lower the urinal to a compliant height as shown above.

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #47 Additional Finding Photos**

 

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

## Finding: 48

**The compartment door is not self closing.**

**The water closet compartment shall be equipped with a door that has an automatic-closing device.**

*2019 CBC 11B (CA) Section 11B-604.8.1.2*
*Toilet compartment doors, including door hardware, shall comply with Section 11B-404 except that if the approach is from the push side of the compartment door, clearance between the door side of the compartment and any obstruction shall be 48 inches (1219 mm) minimum measured perpendicular to the compartment door in its closed position. Doors shall be located in the front partition or in the side wall or partition farthest from the water closet. Where located in the front partition, the door opening shall be 4 inches (102 mm) maximum from the side wall or partition farthest from the water closet. Where located in the side wall or partition, the door opening hinge side jamb for out swinging doors shall be farthest from the water closet and the strike side jamb shall be 54 inches (1372 mm) minimum from the rear wall. The door shall be self-closing. A door pull complying with Section 11B-404.2.1 shall be placed on both sides of the door near the latch. Doors shall not swing into the clear floor space or clearance required for any fixture. Doors may swing into that portion of maneuvering space which does not overlap the clearance required at a water closet.*

*2010 ADAS Section 604.8.1.2*
*Toilet compartment doors, including door hardware, shall comply with 404 except that if the approach is to the latch side of the compartment door, clearance between the door side of the compartment and any obstruction shall be 42 inches (1065 mm) minimum.  Doors shall be located in the front partition or in the side wall or partition farthest from the water closet. Where located in the front partition, the door opening shall be 4 inches (100 mm) maximum from the side wall or partition farthest from the water closet.  Where located in the side wall or partition, the door opening shall be 4 inches (100 mm) maximum from the front partition.  The door shall be self-closing.  A door pull complying with 404.2.7 shall be placed on both sides of the door near the latch. Toilet compartment doors shall not swing into the minimum required compartment area.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-604.8.1.2** | **The compartment door is not self closing.** |
| **2010 ADAS Section: 604.8.1.2** | |

## Recommendation:
**Provide self closing hinges on the compartment door.**

## Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #48 Continued**





## Men's Restroom

## Finding: 49

**The door handle is too small at the exterior side of the door and missing at the inside of the door.**

**Hand-activated door opening hardware, handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching or twisting of the wrist to operate.**

*2019 CBC 11B (CA) Section 11B-604.8.1.2*
*Toilet compartment doors, including door hardware, shall comply with Section 11B-404 except that if the approach is from the push side of the compartment door, clearance between the door side of the compartment and any obstruction shall be 48 inches (1219 mm) minimum measured perpendicular to the compartment door in its closed position. Doors shall be located in the front partition or in the side wall or partition farthest from the water closet. Where located in the front partition, the door opening shall be 4 inches (102 mm) maximum from the side wall or partition farthest from the water closet. Where located in the side wall or partition, the door opening hinge side jamb for out swinging doors shall be farthest from the water closet and the strike side jamb shall be 54 inches (1372 mm) minimum from the rear wall. The door shall be self-closing. A door pull complying with Section 11B-404.2.1 shall be placed on both sides of the door near the latch. Doors shall not swing into the clear floor space or clearance required for any fixture. Doors may swing into that portion of maneuvering space which does not overlap the clearance required at a water closet.*

*2010 ADAS Section 604.8.1.2*
*Toilet compartment doors, including door hardware, shall comply with 404 except that if the approach is to the latch side of the compartment door, clearance between the door side of the compartment and any obstruction shall be 42 inches (1065 mm) minimum. Doors shall be located in the front partition or in the side wall or partition farthest from the water closet. Where located in the front partition, the door opening shall be 4 inches (100 mm) maximum from the side wall or partition farthest from the water closet. Where located in the side wall or partition, the door opening shall be 4 inches (100 mm) maximum from the front partition. The door shall be self-closing. A door pull complying with 404.2.7 shall be placed on both sides of the door near the latch. Toilet compartment doors shall not swing into the minimum required compartment area.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-604.8.1.2**

**2010 ADAS Section: 604.8.1.2**

### As Built:

**The compartment door does not have compliant door opening hardware.**

### Recommendation:
**Provide a compliant loop handle on both sides of the compartment door as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #49 Continued**







*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #49 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 50

**The coat hook is installed greater than 48 inches above the finished floor.**

**Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum above the finished floor.**

*2019 CBC 11B (CA) Section 11B-308.2.1*
*Where a forward reach is unobstructed, the high forward reach shall be 48 inches (1219 mm) maximum and the low forward reach shall be 15 inches (381 mm) minimum above the finish floor or ground.*

*2010 ADAS Section 308.2.1*
*Where a forward reach is unobstructed, the high forward reach shall be 48 inches (1220 mm) maximum and the low forward reach shall be 15 inches (380 mm) minimum above the finish floor or ground.*

**Citation:**

**2019 CBC 11B (CA) Section: 11B-308.2.1**

**2010 ADAS Section: 308.2.1**

**As Built:**

**The coat hook was measured at 62"**

### Recommendation:
**Provide a lowered coat hook.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




Considered
Unobstructed

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 51

**The toilet compartment is not wide enough.**

**Wheelchair accessible compartments shall be 60 inches wide minimum measured perpendicular to the side wall, and 56 inches deep minimum for wall hung water closets and 59 inches deep minimum for floor mounted water closets measured perpendicular to the rear wall.**

*2019 CBC 11B (CA) Section 11B-604.8.1.1*
*Wheelchair accessible compartments shall be 60 inches (1524 mm) wide minimum measured perpendicular to the side wall, and 56 inches (1422 mm) deep minimum for wall hung water closets and 59 inches (1499 mm) deep minimum for floor mounted water closets measured perpendicular to the rear wall. Wheelchair accessible compartments shall additionally provide maneuvering space complying with Section 11B-604.8.1.1.1, 11B-604.8.1.1.2, or 11B- 604.8.1.1.3, as applicable. Wheelchair accessible compartments for children's use shall be 60 inches (1524 mm) wide minimum measured perpendicular to the side wall, and 59 inches (1499 mm) deep minimum for wall hung and floor mounted water closets measured perpendicular to the rear wall.*

*2010 ADAS Section 604.8.1.1*
*Wheelchair accessible compartments shall be 60 inches (1525 mm) wide minimum measured perpendicular to the side wall, and 56 inches (1420 mm) deep minimum for wall hung water closets and 59 inches (1500 mm) deep minimum for floor mounted water closets measured perpendicular to the rear wall. Wheelchair accessible compartments for children's use shall be 60 inches (1525 mm) wide minimum measured perpendicular to the side wall, and 59 inches (1500 mm) deep minimum for wall hung and floor mounted water closets measured perpendicular to the rear wall.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-604.8.1.1** | **The width of the compartment was measured at 53-1/2"** |
| **2010 ADAS Section: 604.8.1.1** | |

### Recommendation:
**Widen the accessible compartment to the full required 60" width.**

### Barrier Priority:
**3 (Moderate): Should be completed as soon as possible, but there may be other items that will provide greater access to persons with disabilities. (Includes; Findings that have a high financial impact on the entity in relationship to the degree of access provided)**

**Finding #51 Continued**



**Finding #51 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 52

**The flush handle is located on the wrong side of the toilet.**

**Controls shall be operable with one hand and shall not require tight grasping, pinching or twisting. Controls for the flush valves shall be mounted on the wide side of toilet areas, no more than 44 inches above the floor.**

*2019 CBC 11B (CA) Section 11B-604.6*
*Flush controls shall be hand operated or automatic. Hand operated flush controls shall comply with Section 11B-309 except they shall be located 44 inches (1118 mm) maximum above the floor. Flush controls shall be located on the open side of the water closet except in ambulatory accessible compartments complying with Section 11B-604.8.2.*

| Citation: | As Built: |
|---|---|
| **2019 CBC 11B (CA) Section: 11B-604.6** | **The flush handle is located on the wall side.** |

### Recommendation:
**Provide a toilet with the flush handle on the open side of the toilet.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**





**Transfer side**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #52 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 53

**The toilet seat cover dispenser is not on an accessible route.**

**Toilet seat covers must be on an accessible route. An accessible route of travel is 36 inches wide minimum and provides a 30 inch by 48 inch clear floor space that allows a side or forward approach. Dispensers must have all operable parts a maximum of 40 inches above the floor.**

*2019 CBC 11B (CA) Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches (1016 mm) maximum above the finish floor.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-603.5**

### As Built:

**The seat cover dispenser is mounted over the rear grab bar and is too high.**

### Recommendation:
**Relocate the seat cover dispenser to a compliant location and height as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**




*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #53 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 54

One toilet paper dispenser is located above the grab bar and the other is behind the rim of the toilet.

**Toilet tissue dispensers shall be located on the wall or partition closest to the water closet, 7 inches minimum and 9 inches maximum in front of the water closet measured to the centerline of the dispenser, mounted below the grab bar, with the outlet of the dispenser 19 inches minimum above the finish floor. There shall be a clearance of 1 1/2 inches minimum below the grab bar. Dispensers shall not be of a type that controls delivery or that does not allow continuous paper flow.**

*2019 CBC 11B (CA) Section 11B-604.7.1*
*Toilet paper dispensers shall comply with Section 11B-309.4 and shall be 7 inches (178 mm) minimum and 9 inches (229 mm) maximum in front of the water closet measured to the centerline of the dispenser. The outlet of the dispenser shall be below the grab bar, 19 inches (483 mm) minimum above the finish floor and shall not be located behind grab bars. Dispensers shall not be of a type that controls delivery or that does not allow continuous paper flow.*

### Citation:

**2019 CBC 11B (CA) Section: 11B-604.7.1**

### As Built:

**The toilet paper dispenser is located above the grab bar.**

### Recommendation:
**Remove the toilet paper dispenser above the side grab bar and relocate the other toilet paper dispenser to a compliant dimension as shown above.**

### Barrier Priority:
**1 (High): Should be completed immediately. (Includes; Findings that have little or no cost, were in violation of the codes at the time of construction, or pose an imminent safety threat)**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #54 Continued**





*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #54 Additional Finding Photos**



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Men's Restroom

### Finding: 55

The side opening compartment door does not have a clear, unobstructed opening 34 inches wide.

The water closet compartment shall be equipped with a door that has an automatic-closing device, and must have a clear, unobstructed opening width 34 inches when located on the side of the compartment.

*2019 CBC 11B (CA) Section 11B-604.8.1.2 Exception*
*When located at the side of a toilet compartment, the toilet compartment door opening shall provide a clear width of 34 inches (864 mm) minimum.*

**Citation:**

2019 CBC 11B (CA) Section: 11B-604.8.1.2 Exception

**As Built:**

The clear door width was measured at 32-1/2"

### Recommendation:
Provide a door with the required 34" clear opening.

### Barrier Priority:
3 (Moderate): Should be completed as soon as possible, but there may be other items that will provide greater access to persons with disabilities. (Includes; Findings that have a high financial impact on the entity in relationship to the degree of access provided)



*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

**Finding #55 Additional Finding Photos**



**U.S. Department of Justice**
Civil Rights Division
*Disability Rights Section*



## Expanding Your Market



**ADA Business Connection**

More than fifty million Americans with disabilities make up a huge, nearly untapped market for businesses of all types and sizes. To help businesses welcome customers with disabilities, the IRS offers two tax incentives to remove access barriers.

**For more information about these tax incentives and the ADA, call the Department of Justice ADA Information Line at:**
**800-514-0301 (voice)**
**800-514-0383 (TTY)**
**or visit the *ADA Business Connection* at:**
**www.ada.gov.**

# Tax Incentives for Businesses

Businesses can take advantage of two Federal tax incentives available to help cover costs of making access improvements for customers with disabilities:

- **A tax credit for small businesses** who remove access barriers from their facilities, provide accessible services, or take other steps to improve accessibility for customers with disabilities
- **A tax deduction for businesses of all sizes** that remove access barriers in their facilities or vehicles

A business that annually incurs eligible expenses to bring itself into compliance with the ADA may use these tax incentives <u>every</u> year. The incentives may be applied to a variety of expenditures; however, they may not be applied to the costs of new construction. All barrier removal must comply with applicable Federal accessibility standards.

### Tax Credit

Small businesses with 30 or fewer employees or total revenues of $1 million or less can use the Disabled Access Credit (Internal Revenue Code, Section 44). Eligible small businesses may take a credit of up to $5,000 (half of eligible expenses up to $10,250, with no credit for the first $250) to offset their costs for access, including barrier removal from their facilities (e.g., widening a doorway, installing a ramp), provision of accessibility services (e.g., sign language interpreters), provision of printed material in alternate formats (e.g., large-print, audio, Braille), and provision or modification of equipment.

### Tax Deduction

Businesses of all sizes may take advantage of this tax deduction. Under Internal Revenue Code, Section 190, businesses can take a business expense deduction of up to $15,000 per year for costs of removing barriers in facilities or vehicles.

### Tax Incentives in Combination

These two incentives can be used together by eligible businesses if the expenditures qualify under both Sections 44 and 190. If a small business' expenses exceed $10,250 for the maximum $5,000 tax credit, then the deduction equals the difference between the total spent and the amount of the credit claimed.

### Tax Incentives Forms and Publications

Visit the Internal Revenue Service website at www.irs.gov
or call 800-829-3676 (voice); 800-829-4059 (TTY)
to order the necessary business forms and publications:
**Form 8826** (Disabled Access Credit)
and **Publication 535 "Business Expenses"** (tax deduction).

November 2005

# Common Questions: Readily Achievable Barrier Removal

The ADA requires companies providing goods and services to the public to take certain limited steps to improve access to existing places of business. This mandate includes the obligation to remove barriers from existing buildings when it is readily achievable to do so. Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense.

Many building features that are common in older facilities such as narrow doors, a step or a round door knob at an entrance door, or a crowded check-out or store aisle are barriers to access by people with disabilities. Removing barriers by ramping a curb, widening an entrance door, installing visual alarms, or designating an accessible parking space is often essential to ensure equal opportunity for people with disabilities. Because removing these and other common barriers can be simple and inexpensive in some cases and difficult and costly in others, the regulations for the ADA provide a flexible approach to compliance. This practical approach requires that barriers be removed in existing facilities only when it is readily achievable to do so. The ADA does not require existing buildings to meet the ADA's standards for newly constructed facilities.

The ADA states that individuals with disabilities may not be denied the full and equal enjoyment of the "goods, services, facilities, privileges, advantages, or accommodations" that the business provides -- in other words, whatever type of good or service a business provides to its customers or clients. A business or other private entity that serves the public must ensure equal opportunity for people with disabilities. In the following section, the US Department of Justice answers some of the most commonly asked questions about the barrier removal requirement and how it differs from those requirements that apply to new construction and alteration of buildings.

***I own three buildings, two of which were designed and constructed prior to the enactment of the ADA. I have been told I have to make them all accessible. Is this true? Does the ADA require me to make them all accessible?***

*The ADA establishes different requirements for existing facilities and new construction. In existing facilities where retrofitting may be expensive, the requirement to provide access through barrier removal is less than it is in new construction where accessibility can be incorporated in the initial stages of design and construction without a significant increase in cost. The requirement to remove barriers in existing buildings applies only to a private entity that owns, leases, leases to or operates a "place of public accommodation." Further, barriers must be removed only where it is "readily achievable" to do so. Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense.*

# Common Questions: Readily Achievable Barrier Removal

*Is my business required to remove barriers?*

*If your business provides goods and services to the public, you are required to remove barriers if doing so is readily achievable. Such a business is called a public accommodation because it serves the public. If your business is not open to the public but is only a place of employment like a warehouse, manufacturing facility or office building, then there is no requirement to remove barriers. Such a facility is called a commercial facility. While the operator of a commercial facility is not required to remove barriers, you must comply with the ADA Standards for Accessible Design when you alter, renovate or expand your facility.*

*What is a "place of public accommodation"?*

*A place of public accommodation is a facility whose operations affect commerce and fall within at least one of the following 12 categories set out in the ADA:*

1. *Places of lodging (e.g., inns, hotels, motels) (except for owner occupied establishments renting fewer than six rooms);*
2. *Establishments serving food or drink (e.g., restaurants and bars);*
3. *Places of exhibition or entertainment (e.g., motion picture houses, theaters, concert halls, stadiums);*
4. *Places of public gathering (e.g., auditoriums, convention centers, lecture halls);*
5. *Sales or rental establishments (e.g., bakeries, grocery stores, hardware stores, shopping centers);*
6. *Service establishments (e.g., Laundromats, dry-cleaners, banks, barber shops, beauty shops, travel services, shoe repair services, funeral parlors, gas stations, offices of accountants or lawyers, pharmacies, insurance offices, professional offices of health care providers, hospitals);*
7. *Public transportation terminals, depots, or stations (not including facilities relating to air transportation);*
8. *Places of public display or collection (e.g., museums, libraries, galleries);*
9. *Places of recreation (e.g., parks, zoos, amusement parks);*
10. *Places of education (e.g., nursery schools, elementary, secondary, undergraduate, or postgraduate private schools);*
11. *Social service center establishments (e.g., day care centers, senior citizen centers, homeless shelters, food banks, adoption agencies); and*
12. *Places of exercise or recreation (e.g., gymnasiums, health spas, bowling alleys, golf courses).*

# Common Questions: Readily Achievable Barrier Removal

***I operate a restaurant that opened in 1991. The city required that the restaurant comply with the local accessibility code. Is the restaurant "grandfathered" and not required to remove barriers as required by the ADA?***

*No. A restaurant is a public accommodation and a place of public accommodation must remove barriers when it is readily achievable to do so. Although the facility may be "grandfathered" according to the local building code, the ADA does not have a provision to "grandfather" a facility. While a local building authority may not require any modifications to bring a building "up to code" until a renovation or major alteration is done, the ADA requires that a place of public accommodation remove barriers that are readily achievable even when no alterations or renovations are planned.*

***Do I, as the owner, have to pay for removing barriers?***

*Yes, but tenants and management companies also have an obligation. Any private entity who owns, leases, leases to, or operates a place of public accommodation shares in the obligation to remove barriers.*

***If I do remove barriers, is my business entitled to any tax benefit to help pay for the cost of compliance?***

*As amended in 1990, the Internal Revenue Code allows a deduction of up to $15,000 per year for expenses associated with the removal of qualified architectural and transportation barriers (Section 190). The 1990 amendment also permits eligible small businesses to receive a tax credit (Section 44) for certain costs of compliance with the ADA. An eligible small business is one whose gross receipts do not exceed $1,000,000 or whose workforce does not consist of more than 30 full-time workers. Qualifying businesses may claim a credit of up to 50 percent of eligible access expenditures that exceed $250 but do not exceed $10,250. Examples of eligible access expenditures include the necessary and reasonable costs of removing architectural, physical, communications, and transportation barriers; providing readers, interpreters, and other auxiliary aids; and acquiring or modifying equipment or devices.*

# Common Questions: Readily Achievable Barrier Removal

### How do I determine what is readily achievable?

*"Readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. Determining if barrier removal is readily achievable is, by necessity, a case-by-case judgment. Factors to consider include:*

1. *The nature and cost of the action;*
2. *The overall financial resources of the site or sites involved; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements necessary for safe operation, including crime prevention measures; or any other impact of the action on the operation of the site;*
3. *The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;*

   *4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and*

   *5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity. If the public accommodation is a facility that is owned or operated by a parent entity that conducts operations at many different sites, you must consider the resources of both the local facility and the parent entity to determine if removal of a particular barrier is "readily achievable." The administrative and fiscal relationship between the local facility and the parent entity must also be considered in evaluating what resources are available for any particular act of barrier removal.*

### Can you tell me what barriers it will be "readily achievable" to remove?

*The Department's regulation contains a list of 21 examples of modifications that may be readily achievable. These include installing ramps, making curb cuts in sidewalks and at entrances, repositioning telephones, adding raised markings on elevator control buttons, installing visual alarms, widening doors, installing offset hinges to widen doorways, insulating lavatory pipes under sinks, repositioning a paper towel dispenser, installing a full-length mirror, rearranging toilet partitions to increase maneuvering space or installing an accessible toilet stall. The list is not exhaustive and is only intended to be illustrative. Each of these modifications will be readily achievable in many instances, but not in all. Whether or not any of these measures is readily achievable will have to be determined on a case-by-case basis in light of the nature and cost of the barrier removal and the resources available.*

# Common Questions: Readily Achievable Barrier Removal

**Does the ADA permit me to consider the effect of a modification on the operation on my business?**

Yes. The ADA permits consideration of factors other than the initial cost of the physical removal of a barrier.

ILLUSTRATION: CDE convenience store determines that it would be inexpensive to remove shelves to provide access to wheelchair users throughout the store. However, this change would result in a significant loss of selling space that would have an adverse effect on its business. In this case, the removal of all the shelves is not readily achievable and, thus, is not required by the ADA. However, it may be readily achievable to remove some shelves.

**If an area of my store is reachable only by a flight of steps, would I be required to add an elevator?**

Usually no. A public accommodation generally would not be required to remove a barrier to physical access posed by a flight of steps, if removal would require extensive ramping or an elevator. The readily achievable standard does not require barrier removal that requires burdensome expense. Thus, where it is not readily achievable to do so, the ADA would not require a public accommodation to provide access to an area reachable only by a flight of stairs.

**I have a portable ramp that we use for deliveries - can't I just use that?**

Yes, you could, but only if the installation of a permanent ramp is not readily achievable. In order to promote safety, a portable ramp should have railings, a firm, stable, nonslip surface and the slope should not exceed one to twelve (one unit of rise for every twelve units horizontal distance). It should also be properly secured and staff should be trained in its safe use.

# Common Questions: Readily Achievable Barrier Removal

***Because one of my buildings is very inaccessible, I don't know what to fix first. Is guidance available?***

*Yes. The Department recommends priorities for removing barriers in existing facilities because you may not have sufficient resources to remove all existing barriers at one time. These priorities are not mandatory. You are free to exercise discretion in determining the most effective "mix" of barrier removal measures for your facilities. The **first priority** is enabling individuals with disabilities to enter the facility. This priority on "getting through the door" recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities. The **second priority** is providing access to those areas where goods and services are made available to the public. For example, in a hardware store these areas would include the front desk and the retail display areas of the store. The **third priority** is providing access to restrooms (if restrooms are provided for use by customers or clients). The **fourth priority** is removing any remaining barriers, for example, lowering telephones.*

***What about my employee areas? Must I remove barriers in areas used only by employees?***

*No. The "readily achievable" obligation to remove barriers in existing facilities does not extend to areas of a facility that are used exclusively by employees. Of course, it may be necessary to remove barriers in response to a request for "reasonable accommodation" by a qualified employee or applicant as required by Title I of the ADA. For more information, contact the Equal Employment Opportunity Commission (EEOC) which enforces Title I of the ADA.*

***How can a public accommodation decide what needs to be done?***

*One effective approach is to conduct a "self-evaluation" of the facility to identify existing barriers. While not required by the ADA, a serious effort at self-assessment and consultation can save resources by identifying the most efficient means of providing required access and can diminish the threat of litigation. It serves as evidence of a good faith effort to comply with the barrier removal requirements of the ADA. This process should include consultation with individuals with disabilities or with organizations representing them and procedures for annual reevaluations.*

# Common Questions: Readily Achievable Barrier Removal

**If a public accommodation determines that its facilities have barriers that should be removed, but it is not readily achievable to undertake all of the modifications now, what should it do?**

*The Department recommends that a public accommodation develop an implementation plan designed to achieve compliance with the ADA's barrier removal requirements. Such a plan, if appropriately designed and executed, could serve as evidence of a good faith effort to comply with the ADA's barrier removal requirements.*

**What if I'm not able to remove barriers at this time due to my financial situation? Does that mean I'm relieved of current responsibilities?**

*No, when you can demonstrate that the removal of barriers is not readily achievable, you must make your goods and services available through alternative methods, if undertaking such methods is readily achievable. Examples of alternative methods include having clerks retrieve merchandise located on inaccessible shelves or delivering goods or services to the customers at curbside or in their homes. Of course, the obligation to remove barriers when readily achievable is a continuing one. Over time, barrier removal that initially was not readily achievable may later become so because of your changed circumstances.*

**If the obligation is continuing, do you mean there are no limits on what I must do to remove barriers?**

*No. There are limits. In removing barriers, a public accommodation does not have to exceed the level of access required under the alterations provisions contained in the Standards (or the new construction provision where the Standards do not provide specific provisions for alterations).*

*ILLUSTRATION 1: An office building that houses places of public accommodation is removing barriers in public areas. The alterations provisions of the Standards explicitly state that areas of rescue assistance are not required in buildings that are being altered. Because barrier removal is not required to exceed the alterations standard, the building owner need not establish areas of rescue assistance.*

*ILLUSTRATION 2: A grocery store has more than 5000 square feet of selling space and prior to the ADA had six inaccessible check-out aisles. Because the Standards do not contain specific provisions applicable to the alteration of check-out aisles one must look to the new construction provisions of the Standards for the upper limit of the barrier removal obligation. These provisions require only two of the six check-out aisles to be accessible. Because the store found it readily achievable in 1993 and 1994 to remove barriers and make two of check-out aisles accessible, the store has fulfilled its obligation and is not required to make more checkout aisles accessible.*

# Common Questions: Readily Achievable Barrier Removal

***What is the difference between barrier removal and alterations? Aren't they both very similar?***

*Not really. Under the ADA, barrier removal is done by a place of public accommodation to remove specific barriers that limit or prevent people with disabilities from obtaining access to the goods and services offered to the public. This is an ongoing obligation for the business that has limits determined by resources, size of the company and other factors. An alteration is replacement, renovation or addition to an element or space of a facility. Generally alterations are done to improve the function of the business, to accommodate a change or growth in services, or as part of a general renovation. The requirements for alterations are greater than those for barrier removal because the alteration is part of a larger construction or replacement effort.*

***One of the buildings that I own is a small factory with offices. Do I have to make that accessible?***

*No, commercial facilities such as factories, warehouses, and office buildings that do not contain places of public accommodation are considered "commercial facilities" and are not required to remove barriers in existing facilities. They are, however, covered by the ADA's requirements for accessible design in new construction or alterations.*

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

# Estimated Time-Line for Barrier Removal
**(Please complete and return page/s to be inserted in report)**

### Accessible Parking Stall
**Estimated Completion Date**

**Finding: 1**   The access aisle is partially obstructed by the carpet from the          _____/_____/_____

**Finding: 2**   The hatch lines at the access aisle are not a maximum 36 inches          _____/_____/_____

### Exterior Accessible Route
**Estimated Completion Date**

**Finding: 3**   The entrance from the public sidewalk at the steps is not          _____/_____/_____

**Finding: 4**   The stairway does not have handrails.  Stairways must have          _____/_____/_____

**Finding: 5**   The stair treads are missing a contrasting stripe on their          _____/_____/_____

**Finding: 6**   The accessible path of travel (walkway) between business          _____/_____/_____

**Finding: 7**   The concrete expansion joints in the walkway are spaced greater          _____/_____/_____

**Finding: 8**   The wall mounted Fire Extinguisher cabinets projects more than 4          _____/_____/_____

**Finding: 9**   There is an abrupt change in level exceeding 4 inches next to          _____/_____/_____

### Outdoor Dining Area
**Estimated Completion Date**

**Finding: 10**   There is no accessible route to the outdoor dining area.  At          _____/_____/_____

**Finding: 11**   There are no accessible tables provided in the outdoor dining          _____/_____/_____

**Finding: 12**   The Canopy and hanging lights at the outdoor dining area extend          _____/_____/_____

### Front Entrance
**Estimated Completion Date**

**Finding: 13**   The floor mats at the front entrance door are not secured in          _____/_____/_____

**Finding: 14**   The front entrance threshold is greater than 1/2 inch high.  The          _____/_____/_____

**Finding: 15**   The door exceeds the maximum allowable opening force.   Doors          _____/_____/_____

### Business Interior
**Estimated Completion Date**

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

# Estimated Time-Line for Barrier Removal
**(Please complete and return page/s to be inserted in report)**

| | | |
|---|---|---|
| **Finding: 16** | **A tactile EXIT sign is missing at the front exit door.   Wall** | _____/_____/_____ |
| **Finding: 17** | **The accessible portion of the countertop does not extend the** | _____/_____/_____ |
| **Finding: 18** | **The knee clearance only extends under the Sushi bar counter less** | _____/_____/_____ |
| **Finding: 19** | **There are no accessible tables provided at the indoor dining** | _____/_____/_____ |
| **Finding: 20** | **Provide directional signage to the nearest accessible restrooms.** | _____/_____/_____ |

**Women's Restroom**                                         **Estimated Completion Date**

| | | |
|---|---|---|
| **Finding: 21** | **A compliant room identification sign is missing on the strike** | _____/_____/_____ |
| **Finding: 22** | **The geometric symbol for the women's room is not within the** | _____/_____/_____ |
| **Finding: 23** | **The path of travel to the accessible toilet compartment is too** | _____/_____/_____ |
| **Finding: 24** | **The maneuvering clearance on the pull side of the door extends** | _____/_____/_____ |
| **Finding: 25** | **The top rim of the lavatory is too high.  All lavatories that** | _____/_____/_____ |
| **Finding: 26** | **The paper towel dispenser's operation mechanism is too high off** | _____/_____/_____ |
| **Finding: 27** | **The "Gargle Dispenser's" operation mechanism is too high off the** | _____/_____/_____ |
| **Finding: 28** | **The mirror is mounted too high.  Mirrors must have the bottom** | _____/_____/_____ |
| **Finding: 29** | **The toilet paper dispenser is located above the grab bar.** | _____/_____/_____ |
| **Finding: 30** | **The side grab bar does not extend far enough from the rear wall.** | _____/_____/_____ |
| **Finding: 31** | **The paper towel dispenser is mounted too close to the top of the** | _____/_____/_____ |
| **Finding: 32** | **The toilet is not located within the range allowed from the side** | _____/_____/_____ |
| **Finding: 33** | **The toilet seat cover dispenser is not on an accessible route.** | _____/_____/_____ |
| **Finding: 34** | **The clear floor space around the toilet is obstructed by the** | _____/_____/_____ |
| **Finding: 35** | **The compartment door locking hardware exceeds maximum height** | _____/_____/_____ |
| **Finding: 36** | **The coat hook is installed greater than 48 inches above the** | _____/_____/_____ |

# Estimated Time-Line for Barrier Removal

**(Please complete and return page/s to be inserted in report)**

| Men's Restroom | | Estimated Completion Date |
|---|---|---|
| Finding: 37 | The paper towel dispenser's operation mechanism is too high off | _____/_____/_____ |
| Finding: 38 | A compliant room identification sign is missing on the strike | _____/_____/_____ |
| Finding: 39 | The door operating hardware is not accessible. Hand-activated | _____/_____/_____ |
| Finding: 40 | The restroom door locking hardware requires tight grasping, | _____/_____/_____ |
| Finding: 41 | The geometric symbol for the men's room is not within the | _____/_____/_____ |
| Finding: 42 | The maneuvering clearance on the pull side of the door extends | _____/_____/_____ |
| Finding: 43 | The "Gargle Dispenser's" operation mechanism is too high off the | _____/_____/_____ |
| Finding: 44 | The mirror is mounted too high. Mirrors must have the bottom | _____/_____/_____ |
| Finding: 45 | The top rim of the lavatory is too high. All lavatories that | _____/_____/_____ |
| Finding: 46 | The water and drain pipes under the lavatory are not adequately | _____/_____/_____ |
| Finding: 47 | The rim of the urinal is above the maximum allowable height. | _____/_____/_____ |
| Finding: 48 | The compartment door is not self closing. The water closet | _____/_____/_____ |
| Finding: 49 | The door handle is too small at the exterior side of the door | _____/_____/_____ |
| Finding: 50 | The coat hook is installed greater than 48 inches above the | _____/_____/_____ |
| Finding: 51 | The toilet compartment is not wide enough. Wheelchair | _____/_____/_____ |
| Finding: 52 | The flush handle is located on the wrong side of the toilet. | _____/_____/_____ |
| Finding: 53 | The toilet seat cover dispenser is not on an accessible route. | _____/_____/_____ |
| Finding: 54 | One toilet paper dispenser is located above the grab bar and the | _____/_____/_____ |
| Finding: 55 | The side opening compartment door does not have a clear, | _____/_____/_____ |

*Fusion Sushi - 1200 CA-1 Hermosa Beach, CA 90254*

## Estimated Time-Line for Barrier Removal
**(Please complete and return page/s to be inserted in report)**

*Completed By:*

*Print Name: _____*          *Title: _____*

*Phone: _____*          *Date: _____*

**Please Mail to:**
*ADA Compliance Masters, Inc.*
*2660 Rudolph Drive*
*Simi Valley, CA 93065*

# EXHIBIT 13

# Costs and Time for Fusion Sushi Remediation Based on CASp Report Dated 4/1/21

Finding 1.  Estimated Cost: $0, Time: 5 minutes

Finding 2.  Estimated Cost: $150, Time: 2 hours

Finding 3.  Estimated Cost: $75, Time: 30 minutes

Finding 4:  Estimated Cost:  $900, Time: 4 hours

Finding 6.  Estimated Cost: $15,000, Time 3 days (This will affect the businesses and will have to be coordinated)

Finding 7.  Estimated Cost: $300, Time 3 hours

Finding 8.  Estimated Cost: $250, Time 2 hours (bolt a rubber curb down below the cabinets)

Finding 9.  Estimated Cost: $350, Time 3 hours

Finding 10: Estimated Cost: $200, Time 30 minutes (purchase and provide a temp aluminum ramp)

Finding 12.  Estimated Cost: $0, Time 30 minutes

Finding 13.  Estimated Cost: $0, Time 15 minutes (Remove the mats)

Finding 14. Estimated Cost: $200, Time 1 hour

Finding 15. Estimated Cost: $25, Time 15 minutes

Finding 20. Estimated Cost: $30, Time 15 minutes

Finding 38. Estimated Cost: $45, Time 15 minutes

Finding 39. Estimated Cost: $40, Time 30 minutes

Finding 40. Included in Finding 39

Finding 41. Estimated Cost: $0, Time 15 minutes

Finding 42. Estimated Cost: $50, Time 30 minutes

Finding 48. Estimated Cost: $150, Time 2 hours

Finding 49. Estimated Cost: $100, Time 1 hour

Finding 50. Estimated Cost: $15, Time 15 minutes

Finding 51. Estimated Cost: $450, Time 4 hours

Finding 52. Estimated Cost: $250, Time 2 hours

Finding 53. Estimated Cost: $75, Time 45 minutes

Finding 54. Estimated Cost: $75, Time 45 minutes

Finding 55. Included in Finding 51

John Battista
Certified Access Specialist (CASp) #592
Texas Registered Accessibility Specialist #1434
ICC Accessibility / Plan Examiner Inspector #5057311-21
ACAI ADA Compliance Inspector #6097
CALBO Access Committee Member 2016-2020

# EXHIBIT 14

1200 Pacific Hwy | PropertyShark

# General

## 1. Overview

### Location

| | |
|---|---|
| Property address | **1200 Pacific Coast Hwy**<br>**Hermosa Beach, CA 90254** |
| Alternate address(es) | **1200 Highway 1**<br>**1200 State Route 1** |
| County | **Los Angeles** |
| Lat/long | **33.86416,-118.39242** |
| Parcel ID | **4185011037** |

### Legal Description

LOTS 2, 3 AND 6 TRACY TRACT AND VAC ST ADJ ON SW AND
LOTS 1 AND 2 SCOLES TRACT

### Owner

| | |
|---|---|
| Name | **Hb Mat Properties LLC** |
| Address | **PO Box 2473**<br>**Beverly Hills, CA 90213** |
| Purchase date | **02/01/2017** |
| Purchase price | **$2,900,000** |
| Arm's length | **Yes** |

### Neighborhood

| | |
|---|---|
| School district | **Hermosa Beach City**<br>**Elementary School District** |
| Municipality | **Hermosa Beach** |
| Assessor map | |
| Index map | |

### Property Tax

| | |
|---|---|
| Tax year | **2021-2022** |
| Land value | **$4,374,584** |
| Building value | **$2,187,292** |
| Market value | **$6,561,876** |
| Property tax | **$69,648** |

### Land

| | |
|---|---|
| Property class | **Store** |
| Zoning | **General Commercial (C-3)** |
| Acreage | **0.5** |
| Weed hazard | **No** |

### Building

| | |
|---|---|
| Square footage | **14,850** |
| Year built | **1983** |
| Year last altered | **1986** |
| Stories | **1** |

## 2. Photos



3. Maps



# Contacts

## 1. Registered Owner

**Hb Mat Properties LLC**

PO Box 2473

Beverly Hills, CA 90213

Source: **Assessment Roll**

Last recorded: **06/18/2021**

 See who is behind the LLC

Add to address book

# Documents

## 1. Title Documents

Export to Excel (9 records)

| Date | Type | Amount | Party 1 | Party 2 | Document | Doc image |
|------|------|--------|---------|---------|----------|-----------|
| 3/23/2021 | Mechanics lien | | HB Matt Properties LLC | Westwood Building Materials CO | 20210462855 | 📄 |
| 5/1/2017 | Reconveyance Substitution trustee | | American Securities Company Glenmat Properties LLC Wells Fargo Bank | American Securities Company Glenmat Properties LLC | 20170480743 | 📄 |
| 3/28/2017 | Assignment of rents Financing statement Trust deed | $3,800,000 | HB Mat Properties LLC | Wells Fargo Bank | 20170340454 | 📄 |
| 2/1/2017 | Reinstate trust deed Substitution trustee | $2,610,000 | HB Mat Properties LLC | First American Title Insurance Company Trustee Matloob Revocable Family Trust | 20170136331 | 📄 |
| 2/1/2017 | Grant deed | $2,900,000 | California Nugget INC | HB Mat Properties LLC | 20170136330 | 📄 |
| 2/1/2017 | Quitclaim deed | | Glenmat Properties LLC | California Nugget INC | 20170136329 | 📄 |
| 12/29/2006 | Trust deed | | Glenmat Properties LLC | Wells Fargo Bank | 20062895199 | 📄 |
| 10/16/1995 | Deed | $568,500 | Vienna, Anthony M | California Nugget INC Lessor 260 S Beverly Dr 301 Beverly Hills CA 90212 | 19951664503 | |
| 11/30/1994 | Deed | $1,777,773 | Hermosa Beach Center | Vienna, Anthony M | 19942141828 | |

# Occupancy

## 1. Building Contacts

**Phone Records of Residents**

| Name | Unit | First seen | Phone number |
|------|------|-----------|-------------|
| Advanced Sports Medicine | 203 | 2006 | (310) 318-1820 |
| Avanti Jewelers | 107 | 1985 | (310) 372-6963 |
| Fusion Sushi | 101 | 2006 | (310) 318-2781 |
| Hip Studio | 105 | 2012 | (310) 376-6447 |
| Oasis Thai Massage & Spa | | 2012 | (310) 376-4999 |
| Paradice Mary-Fantasy Salon | 106 | 2006 | (310) 406-0975 |

# Taxes

## 1. Tax Bill

| | |
|---|---|
| Current tax bill for 07/01/2021 to 06/30/2022 | **$75,897** |

| | |
|---|---|
| Property tax bill for 07/01/2021 to 06/30/2022 | **$69,648** |

## 2. Key Values in Calculating the Bill

| | |
|---|---|
| Assessed market value | **$6,561,876** |
| Exemption value | **$0** |
| Taxable value | **$6,561,876** |
| Special assessments | **$6,248** |

## 3. Base Year Values

Proposition 13 establishes a base year value for real estate and limits increases in the taxable value. It limits annual increases in the base year value of real property to no more than 2%, except: *change in ownership, new construction, new construction partially completed on the lien date (January 1) or decline-in-value*.

| | Base year | Base value |
|---|---|---|
| Land | 2017 | $4,000,000 |
| Improvement | 2017 | $2,000,000 |
| **Market value** | | **$6,000,000** |

# 4. Property Tax Calculation

The California Constitution mandates that all property is subject to taxation unless otherwise exempted by state or federal law. Proposition 13, enacted in 1978, forms the basis for the current property tax laws. Both real and personal property are generally subject to ad valorem taxation; that is, they are taxed in proportion to their value. Taxes which constitute a lien on real property are referred to as secured. Almost all real property taxes are secured. Most personal property taxes are unsecured. Some taxes on personal property may also be secured to the real property of the assessee, upon request and subject to certain conditions.

## Assessed Market Value

*Assessed value* is calculated based on market value using a base year value. A property's original base value is its 1975-1976 market value and can be adjusted each year by no more than 2% to account for inflation. However, if there has been a change in ownership or completed new construction, the new assessed value will be the market value of the property as of the date that it changed ownership or was newly constructed.

| | | |
|---|---|---|
| Land value | | $4,374,584 |
| Improvement value | + | $2,187,292 |
| **Assessed value** | = | **$6,561,876** |

### Exemptions and Taxable Value

*Taxable value* represents the assessed value less any tax exemptions that apply. The State of California Constitution provides a variety of full and partial exemptions such as homeowners, veterans, disabled veterans, that may lower the property's tax bill. Exemptions are subject to rigid filing deadlines.

This property does not benefit from any exemption, therefore the taxable value is equal to the assessed value.

## Property Tax

*Base tax* is calculated by multiplying the property's assessed value by all the tax rates applicable to it and is an estimate of what an owner not benefiting from any exemptions, special assessments or penalties would pay.

| Tax description | Assessed value | | Tax rate | | Tax amount |
|---|---|---|---|---|---|
| Commnty College | $6,561,876 | x | 0.0226 | = | $1,485.54 |
| Elem Schools | $6,561,876 | x | 0.0353 | = | $2,314.70 |
| General | $6,561,876 | x | 1.0000 | = | $65,618.76 |
| Metro Water Dist | $6,561,876 | x | 0.0035 | = | $229.67 |
| **Base tax** | **$6,561,876** | **x** | **1.0614** | **=** | **$69,648** |

*Current tax* is an estimate of what an owner pays including special taxes/direct assessments and penalties.

| | | |
|---|---|---|
| Base tax | | $69,648 |
| Special assessments | + | $6,249 |
| **Current tax** | = | **$75,897** |

### 2022-2023 Estimated Market Value and Tax Bill

Estimated market values are based on current assessment values and they represent the 2% increase regulated in California's property tax law.

| | | |
|---|---|---|
| Estimated land value | | $4,462,076 |
| Estimated improvement value | + | $2,231,038 |
| **Estimated market value** | = | **$6,693,114** |

The estimated tax bill is calculated based on the assessed value without adding exemptions. If no changes are made to the way Los Angeles computes property taxes, we estimate that the 2022-2023 tax bill will be as follows:

| Tax description | Assessed value | | Tax rate | | Tax amount |
|---|---|---|---|---|---|
| **Estimated property tax** | **$6,693,114** | x | **1.0614** | = | **$71,041** |

Actual taxes might differ from the figures displayed here due to various abatements and financial assistance programs or to non ad-valorem taxes
levied as special taxes/direct assessments.

For more information please visit the web pages of California State Board of Equalization, Los Angeles County's Assessor and Treasurer-Tax Collector
or look up this property's current valuation and tax situation.



This map shows property tax in correlation with square footage of the property.



| | | | |
|---|---|---|---|
| ■ | Above $10.00 | ▢ | $4.00 - $5.00 |
| ■ | $9.00 - $10.00 | ▢ | $3.00 - $4.00 |
| ■ | $8.00 - $9.00 | ▢ | $2.00 - $3.00 |
| ▢ | $7.00 - $8.00 | ▢ | $1.00 - $2.00 |
| ▢ | $6.00 - $7.00 | ■ | Below $1.00 |
| ▢ | $5.00 - $6.00 | □ | No Data |

▦ Multiple properties on the same parcel.
Color coordinates with the price ranges above.

| | |
|---|---|
| Property tax | **$69,648** |
| Tax year | **2021-2022** |
| Square feet | **14,850** |
| Tax per sqft | **$5** |

## 5. Special Assessments And Penalties

Abatements, financial assistance programs and non-ad valorem taxes levied as special taxes/direct assessments are applicable for this property.

| Code | Description | Bill description | Tax levied | Phone number |
|---|---|---|---|---|
| 16851 | Hermosa beach light maintenance | Hermosa bch LGHT | $207 | (310) 318-0225 |
| 16893 | Hermosa beach sewer service charge | HB sewer SRV CHG | $517 | (949) 585-0477 |
| 03694 | LA county regional park and open space district | Rposd measure a | $237 | (833) 265-2600 |
| 03071 | Los angeles county flood control | Flood control | $208 | (626) 458-5165 |
| 00170 | Los angeles county trauma/emerg SRVS | Trauma/emerg SRV | $629 | (866) 587-2862 |
| 00177 | Safe | Clean water program funding measure W | $496 | |
| 06280 | South bay cities sanitation district | SBC san dist | $3,820 | (562) 908-4288 Ext 2727 |
| 37581 | West basin MWD standby charge | WB MWD stdby CHG | $120 | (800) 676-7516 |
| 06111 | West vector mosquito | LA west mosq ab | $10 | (310) 915-7370 Ext 223 |

# 6. Assessment History

| Year | Property class | Assessment value | Total tax rate | Property tax |
|------|----------------|-----------------:|---------------:|-------------:|
| 2020-2021 | Store & Office Combination - One Story | $6,494,592 | 1.066235 | $69,248 |
| 2019-2020 | Store & Office Combination - One Story | $6,242,400 | 1.064751 | $66,466 |
| 2018-2019 | Store & Office Combination - One Story | $2,250,878 | 1.0517 | $23,672 |
| 2017-2018 | Store & Office Combination - One Story | $2,206,744 | 1.0649 | $23,501 |
| 2016-2017 | Store & Office Combination - One Story | $2,163,476 | 1.0414 | $22,530 |
| 2015-2016 | Store & Office Combination - One Story | $2,130,980 | 1.0367 | $22,092 |
| 2014-2015 | Store & Office Combination - One Story | $2,089,238 | 1.0357 | $21,637 |
| 2013-2014 | Store and Office Combination | $2,079,797 | 1.039 | $21,608 |
| 2012-2013 | Store and Office Combination | $2,039,018 | 1.0405 | $21,217 |
| 2011-2012 | Store and Office Combination | $1,999,038 | 1.0375 | $20,740 |
| 2010-2011 | Store and Office Combination | $1,930,488 | 1.0379 | $20,037 |
| 2009-2010 | Store and Office Combination | $1,897,133 | 1.0364 | $19,662 |
| 2008-2009 | Store and Office Combination | $1,897,133 | 1.037724 | $19,687 |



# Development

## 1. Land

### Land

| | |
|---|---|
| Property class | **Store** |
| Zoning | **General Commercial (C-3)** |
| Acreage | **0.5** |
| Weed hazard | **No** |

## 2. Building

### Building

| | |
|---|---|
| Square footage | **14,850** |
| Year built | **1983** |
| Year last altered | **1986** |
| Stories | **1** |

### Details

| | |
|---|---|
| Construction type | **Fire-resistant - masonry walls, combustible roof and interior** |
| Quality class code | **CX** |
| Air conditioning | **Yes** |

# Neighborhood

## 1. Neighborhood Price History

No records found.

## 2. Sales & Values Maps

### Date of Last Sale



Sale age: **4 years & 257 days**

This map shows the most recent sales around the subject property, with darker colors indicating more recent sales.

- ▇ Second half of 2020
- ▇ First half of 2020
- ▇ Second half of 2019
- ▇ First half of 2019
- ▇ Second half of 2018
- ▇ First half of 2018
- ▇ 2016 - 2017
- ▢ < 2016
- ▢ No data

The map is based only on valid sales with a recorded price over $1,000.

### Price per Square Foot



On this color-coded map, view the price paid per square foot around the subject property.

| | |
|---|---|
| Building sqft | **14,850** |
| Sale price | **$2,900,000** |
| Price per sqft | **$195** |



- ▇ Below $100
- ▇ $100 - $250
- ▇ $250 - $400
- ▇ $400 - $550
- ▇ $550 - $700
- ▇ $700 - $850
- ▇ $850 - $1000
- ▇ Above $1000
- ▢ No data

▨ Multiple properties on the same parcel. Color coordinates with the price ranges above.

Note: The map displays Price Per Square Foot ($/sqft) for properties sold in the last 5 years.

## 3. Land Use



On this map, view the current land use for a property. The land use specifies how a property is used or what type of building is present on that property.

| | |
|---|---|
| Single family | Public services/Facilities |
| Condominium/Coop units | Education |
| Other residential | Cemeteries and other religious |
| Apartments/Multi-Family | Hospitals/Care facilities |
| Office | Other institutional |
| Retail | Entertainment/Recreation |
| Hotel/Motel/Other accommodation | |
| Restaurants | Agricultural |
| | Parks |
| | Mixed use |
| Manufacturing/ Storage facilities | Vacant land |
| Other industrial | Other |
| | Unknown |

✳ Land use: **Store**

## 4. Zoning



Properties can be classified by zoning and building class. Los Angeles County is divided into four basic zoning districts: residential (R), commercial (C), agricultural(A) and manufacturing (M).These basic zoning districts are subdivided by the intensity of use.

Major zoning groups:

- Multiple family
- Single family
- Other residential
- Commercial
- Offices
- Industrial/manufacturing
- Public facilities
- Open space
- Agricultural
- Mixed use
- Planned development
- Special zones
- Parking
- Planned development - overlay
- No zoning data available

✳ Zoning: **General Commercial (C-3)**

For more information about zoning districts click here.

# 5. Urban Landscape Maps

## Year Built




On this map, view the year each property was built.

- 2015 and later
- 2010 - 2014
- 2000 - 2009
- 1990 - 1999
- 1970 - 1989
- 1950 - 1969
- 1900 - 1949
- older than 1900

✳ Year built: **1983**

## Building Stories




On this map, view the number of stories per building.

- 10 & Up stories
- 7 to 9 Stories
- 5 to 6 Stories
- 4 Stories
- 3 Stories
- 2 Stories
- 1 Story
- No data

✳ Stories: **1**

## 6. Traffic Map



Map represents the traffic volumes for the count locations on the California state highway system. Annual average daily traffic in a location is represented by the total volume of the year divided by 365 days.

**Average daily traffic**

- 🔴 240001 - 500000
- 🔴 170001 - 240000
- 🟠 100001 - 170000
- 🟡 55001 - 100000
- 🟢 20001 - 55000
- 🟢 1 - 20000

# 7. Demographics By Zip Code

Demographic data shown in this section was gathered from the 2019 American Community Survey and refers to zip code **90254**.

## Population Demographics

| | |
|---|---|
| Total population | **19,539** |
| Female population | **46.3%** |
| Male population | **53.7%** |
| Median age | **39.3** |
| Male median age | **40.1** |
| Female median age | **38.5** |

## Education

| | |
|---|---|
| No highschool | **1.3%** |
| Some highschool or college | **18.2%** |
| Bachelors degree | **48.3%** |

## Other

| | |
|---|---|
| Citizens | **96.2%** |
| Citizens born in US | **87.8%** |
| English speakers | **99.0%** |

## Journey to Work

| | |
|---|---|
| Work in a metropolitan area | **99.9%** |
| Work at home | **12.5%** |
| Go to work by car | **79.9%** |
| Go to work after 10 am | **10.7%** |

## Economic/Employment

| | |
|---|---|
| Average household income | **$206,472** |
| White collar | **91.8%** |
| Blue collar | **8.2%** |

## Housing

| | |
|---|---|
| Family households | **47.1%** |
| Households with kids | **20.5%** |
| Housing units | **10,058** |
| Occupied housing units | **8,956** |
| Owner occupied units | **47.4%** |
| Average number of people per household | **2.18** |
| Median year structure built | **1969** |
| Houses with mortgages | **73.4%** |

## Wealth

| | |
|---|---|
| Median value for units with a mortgage | **$1,577,600** |
| Median value for units without a mortgage | **$1,160,000** |
| Median gross rent | **$2,181** |
| Median mobile home values | **$281,300** |
| Median housing costs per month | **$2,371** |
| Population in poverty | **4.5%** |

# Risk

## 1. FEMA Flood Zones

Use this map to determine if your property is at risk for flooding or storm surge and if it requires flood insurance.




Moderate to low risk areas
☐ X
☐ 0.2% PCT

High risk areas
☐ A
☐ AE
☐ AH
☐ AO

High risk-coastal areas
☐ V
☐ VE

☐ ANI, D, UNDES *
▨ Floodway
\* Undetermined flood hazard
(possible flooding)

### Flood Zone Details

| | |
|---|---|
| FEMA flood zone | **X - Low Risk Area** |
| Costal barrier resources system area (COBRA) | **Out** |
| FEMA floodway | **Out** |
| FEMA special flood hazard area | **Out** |

For more information about FEMA flood zones map click here.

### Map Details

| | |
|---|---|
| Map panel ID | **06037C1907F effective from 09/26/2008** |

## 2. Fire Hazard Zones

Fire hazard class
- Very high
- High
- Moderate

Responsability area
- SRA - State responsability area
- FRA - Federal responsability area
- LRA - Local responsability area

Historical fire areas
- 1980-1990
- 1990-2000
- 2000-2010
- 2010-2014

State and local fire protection facilities

Hydrants

## 3. Faults and Tsunami Inundation Zones

Earth quake fault zones

Tsunami inundation zone

Fault line type
- Accurate located faults
- Approximately located faults
- Inferred faults
- Aerial photo lineament
- Concealed faults



## 4. Landslides and Liquefaction



- 🟥 Landslide hazard zones
- ▨ Liquefaction hazard zones
- ▨ Unevaluated zones

## Disclaimer

Copyright 2003-2021 by Property Research Partners LLC

All data comes from government sources. No attempt has been made to validate it. No attempt has been made to validate the accuracy of the programming of this web site. Do not rely on this report to support investment decisions. The only authoritative source for the information in this report is the government agencies from which the data was acquired.

# EXHIBIT 15



# EXHIBIT 16



# EXHIBIT 17



# EXHIBIT 18



# EXHIBIT 19



# EXHIBIT 20



# EXHIBIT 21



# EXHIBIT 22



# EXHIBIT 23



# EXHIBIT 24



# EXHIBIT 25



# EXHIBIT 26



# EXHIBIT 27



# EXHIBIT 28



# EXHIBIT 29



# EXHIBIT 30



# EXHIBIT 31



# EXHIBIT 32

**Laura Steven**

| | |
|---|---|
| **From:** | James Link <james.s.link@att.net> |
| **Sent:** | Thursday, October 14, 2021 11:02 AM |
| **To:** | Laura Steven |
| **Cc:** | Anoush Hakimi; Peter Shahriari; Kyle Wilson |
| **Subject:** | Re: James Shayler v. HB Mat - Request for L.R 7-3 Meet and Confer - Plaintiff's Contemplated Motion for Summary Judgment |

We already met and conferred at the Starbucks in Eagle Rock on September 2, 2021.  We discussed all the issues at that time.  There is no need to do so again.  If for whatever reason you need to make the attorney fees larger in this case, which would be the only reason for another meet and confer, I am not available until October 28, 2021

James S. Link
Counselor & Advocate At Law
215 N. Marengo, 3rd Floor
Pasadena, CA 91101
(626) 793-9570
(626) 628-1925 (fax)
(626) 379-5270 (cell)

On Oct 14, 2021, at 9:47 AM, Laura Steven <laura@handslawgroup.com> wrote:

Dear Mr. Link:

Following up on our request to meet and confer this week regarding Plaintiff's contemplated motion for summary judgment. Per Judge Olguin's Order re: Summary Judgment Motions, we are required to meet in person at an agreed-upon location in the Central District. We propose meeting at the same Starbucks at 2218 Colorado Blvd, Los Angeles, CA 90041 with outdoor seating and tables. While mid-Friday works best for us, we are happy to work with your schedule.

Regards,

_____

Laura Steven, Esq.

<image001.jpg>   the law office of
                 Hakimi & Shahriari

1800 Vine Street, Los Angeles, CA 90028
www.handslawgroup.com

Mobile: (424) 372-7537 | Fax: (213) 402-2170

1

279

This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited. Note: No attorney-client relationship is formed until the parties have signed an attorney-client agreement. Attorneys do not provide any tax advice. Please consult your tax professional.

---

**From:** Laura Steven
**Sent:** Tuesday, October 12, 2021 11:20 AM
**To:** James Link <james.s.link@att.net>
**Cc:** Anoush Hakimi <anoush@handslawgroup.com>; Peter Shahriari <peter@handslawgroup.com>; Kyle Wilson <kyle@handslawgroup.com>
**Subject:** James Shayler v. HB Mat - Request for L.R 7-3 Meet and Confer - Plaintiff's Contemplated Motion for Summary Judgment

Dear Mr. Link:

Please provide your availability to meet and confer this week regarding Plaintiff's contemplated Motion for Summary Judgment pursuant to LR 7-3 and the Court's Order. Per Judge Olguin's Order re: Summary Judgment Motions, we are required to meet in person at an agreed-upon location in the Central District. We propose meeting at the same Starbucks at 2218 Colorado Blvd, Los Angeles, CA 90041 with outdoor seating and tables. While mid-Friday works best for us, we are happy to work with your schedule.

Regards,

_____
Laura Steven, Esq.

<image001.jpg>   the law office of
Hakimi & Shahriari

1800 Vine Street, Los Angeles, CA 90028
www.handslawgroup.com

Mobile: (424) 372-7537 | Fax: (213) 402-2170

This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited. Note: No attorney-client relationship is formed until the parties have signed an attorney-client agreement. Attorneys do not provide any tax advice. Please consult your tax professional.